WeldoN, J.,
delivered the opinion of the court:
On the 23d day of September, A. D. 1879, the claimant and defendants entered into an agreement, the substance of which is that the claimant agreed to perform certain dredging for the defendants in the Lubec Narrows in the State of Maine, consisting of four excavations, amounting in the aggregate to 142,720 cubic yards, more or less, for which the claimant was to receive different prices, according to the location. The contract advertisement and specifications are made a part of the petition as “A. D. Co., Exhibit No. 1.” It is alleged that the defendants had by examination ascertained, as they thought, the character of the material in the different excavations, especialty D and C, which comprise the larger portion of the excavation, and that upon such knowledge the contract provides as to the character of the material embraced in such excavation, as hereafter shown; that the claimant ■ entered upon the performance of the work within the time with sufficient force; that in the prosecution of the work it was found that D and E did not consist as in said contract provided of “sandy mud and a little gravel,” but upon the contrary consisted of stiff and tenacious clay extremely difficult to remove. It is further averred that upon finding that to be the character of the material the parties attempted to make a new agreement, but failed to do so; that thereupon the claimant abandoned further work upon said shoal in consequence of such materia] being so different from that alleged, and that because of such breach of contract on the part of the defendants the claimant suffered and was subjected to great loss by being prevented from making gains in the performance of such work.
*477 It is further alleged that for work actually performed on the different parts of said contract there is due the claimant the sum of $1,217, which being added to the profits which the claimant would have made, and the expenditure to which it was subjected in preparation for the work, amounts to the sum of $35,465/88.
The main controversy arises on that portion of the contract embraced in the fourth classification of work between points D and E, the claimant contending, that as to that work, there is a warranty as to the character of the material to be excavated in the specifications, as follows: “The material composed in shoals between D and E consists chiefly of sandy mud and a little gravel, the estimated quantity of which to be averaged amounts to 125,000 mdre or less cubic yards, measured in scow.” The findings show that the shoals between D and E differed very materially from “sandy mud and a little gravel ” and that such excavation was worth much more than “sandy mud and a little gravel.”
The legal theory upon which the claimant seeks to recover is that there is an express warranty in the agreement as to the quality of the excavation, that such warranty was violated by the great difference in the material in fact and the material contracted for, and because of such violation it is entitled to recover profits and compensation for its outlay in preparing for the execution and performance of the work.
It is contended by defendants that as a matter of fact the claimant did not rely on the specifications as to the character of the material, but made examinations for itself; and conceding that the terms of the specifications measure the liability of the defendants, they do not express or imply a warranty of the kind of material composing the excavation provided for in the agreement. In support of this contention counsel for the United States quotes the language of the Supreme Court in the case of Simpson & Co. v. The United States (172 U. S., 372) and this court in the same case (31 C. Cls. K., 217).
It is said by the Supreme Court: “ If it had been their intention to only undertake to build a dock for the price stipulated, provided a guaranty was afforded them by the United States that the soil upon which the dock was to be constructed was *478 to be of a particular nature, conforming to a plan then existing, a purpose so important, so vital, would necessarily have found direct and positive expression in the bid and specifications, and would not have been left to bo evolved by a forced and latitudinarian construction of the word ‘ available,’ used only in the nature of a recital in the specifications and not in the contract. The fact that the bidders knew that a test of the soil in the yard had been made, and drew the contract providing that the dock should be located on a site to be designated by the United States, without any express stipulation that there was a warranty in their favor that the ground selected should be of a defined character, precludes the conception that the terms of the contract imposed such obligation on the Government in the absence of a full and clear expression to that effect, or at least an unavailable implication.”
In the opinion of this court it is said: “We fail to see how the character of the soil entered into the contract. No representations were made as to it (the profile shown in the findings of fact did not amount to a representation upon which the plaintiffs might rely); the Government did not guarantee the character of the soil underlying the site, but freely gave the plaintiffs what information it had, and the parties contracted in no way as to the foundation of the site.”
In the Simpson case the contract simply provided that the dry dock was to be built in certain navy-yards, “ upon available sites to be provided by the Government,” and under that clause of the agreement it was held by this court, and affirmed bj' the Supreme Court, that there was no warranty as the subsoil or guaranty against quicksand, or any other matter which might cause an extraordinary expense to the contractor.
The substance of the decision is, that no liability attached to the United States because the terms of the contract had no reference to the character of the material to be excavated in the performance of the agreement.
The Supreme Court in substance says: If it had been the purpose to particularize the material to be excavated, such a purpose would have found expression in the bid and specifications and would not have depended upon the “latitudinarian construction of the word ‘ available ’ in the nature of a recital in the specification.” The Simpson case differs very *479 much from the case at bar in this, to wit: In that case the contract of warranty as contended for by the claimant depended upon the use of the expression “upon a site that was available,” without any designation of the character or quality of the material to be excavated; in this case there is a specific description of the kind of material which is to be removed, to wit, to consist chiefly of “ sandy mud and a little gravel.”
In the Simpson case the alleged warranty related to the surface indications of an available site open to the inspection and view of the claimant, but in this case the alleged warranty is as to the composition of the material composing the shoals which by the terms of the agreement were to be dredged. The one stated an available site as to space and environment; the other relates to the character and quality of • the material, which is shown by the findings to have been very important, inasmuch as when the true character of the shoal was known a contract was let at nearly double the price for which the claimant was to do the work. One related to the surface or site; the other refers to composition hidden from the view.
The findings show that the claimant commenced the work on the 8th day of October, which was within the time prescribed by the contract in pursuance of directions of the engineer in charge, and continued at-the point designated until the 22d, when, by permission, the claimant removed its plant to point C, designated in the agreement, and from that point the plant was removed to point B, where, in consequence ,of the strength of the tide, the further prosecution of the work at that place was suspended until the close of the winter. The dredging plant with which the claimant began the work was commensurate with the requirements of the work.
The controversy in this case originates as to the work contracted to be done at the shoals' coming within the points D and E, as specified in the fourth clause of the agreement, which embraces the principal part of the work contemplated by the contract.
In the specifications which are made a part of the agreement it is prordded as follows:
“At the several shoals lying between the point marked D on the map (which is about 700 feet north of the upper block *480 buoy) and the point about li miles below, marked E on the map (about 850 feet south of the western bar beacon), on which the depth varies from 4 to 12 feet at mean low water. The materials composing the shoals between D and E consist chiefly of sandy mud and a little gravel, the estimated quantity of which to be dredged amounts to 125,000, more or less, cubic yards measured m scow.'1'1
The finding with reference to the character of the material composing the shoals between the point of D and E shows that they were composed, in a large measure, of stiff, sticky clay of the character known as tenacious or hard; and upon the discovery of that fact the engineer in charge and the claimant attempted to make a new agreement based on the character of the actual material; but such negotiations failed, and on the 24th of February the claimant abandoned the further prosecution of the work.
The claimant seeks, by this proceeding, to recover damages because of a breach of the contract in respect to the character of the material composing the shoals D and E and the retained percentage on the work done at the point C. The findings show that on that work the defendants have retained the sum of $423.35.
The defendants insist that the warranty was not relied on by the claimant in making the contract; but upon the contrary it made an examination for itself, and from such examination concluded that it was safe to assume that the material was substantially of the kind specified in the agreement, and upon the faith of that knowledge so obtained, and without reliance upon the terms of the agreement, undertook and agreed to excavate the shoals D and E. The findings show that before the claimant made a bid for the work one of the agents of the company made an examination for the purpose of ascertaining the force of the tide and to some extent the character of the material composing the shoal, and from such examination, in connection with what is specified in the agreement as to the kind of material, it may be assumed, the contract was executed. .
The court is of the opinion that the representation in the specification and embraced in the contract that “ the material composing the shoals between D. and E consists chiefly of sandy mud and a little gravel ” is a warranty as to the char *481 acter of the material, and although the agents of the company may have made an examination to ascertain the character of the tides, and to some extent the character of the material to. be removed, such examination did not waive the representation or warranty made by the defendants and forming an essential and vital portion of the contract.
Although the claimant had a right to rely on the warranty, out of abundant caution it may have adopted the expedient of making an examination for itself, in order that it might not be subjected to the risk of making a contract with the United States which might involve the trouble and expense of litigation incident to an agreement founded on an error of fact.
It may not have concluded from its examination that the material was as represented, but it did decide it was safe from indications to undertake the work,.with the guaranty of the United States as to the quality of the material.
The cost of the work to be performed depended to a large extent on the character of the material lying between points D and E, and therefore what is said in the contract as to the quality of such material must be construed as being, in the estimation of the parties, important, and constituting one of the essential provisions of the agreement. And although the claimant made an examination and did not detect the mistake of the defendants in representing that the shoals were of sandy mud and a little gravel, it does not follow as a consequence that thereby the defendants are relieved from the legal responsibility incident to the guaranty of the quality of the material to be excavated. The object and purpose of reducing an agreement to writing is to impress upon it the quality of certainty, and to comprehend into compact form the very essence of the agreement; and it is for these reasons that the law excludes previous statements and understandings and enforces the contract as the parties have made it by the written terms of their agreement. A written agreement is to be enforced in all .its parts, and therefore what the parties may have said antecedent or contemporaneous with execution of the agreement is excluded. And so the acts of the parties before the execution of an agreement can not be so construed as to limit or suspend one of the most important provisions of a written agreement.
*482 Attached to the proposal of the claimant is a statement, the substance of which is that the proposal is made with a full knowledge of the kind, quality, and quantity of the articles required. The phraseology of that statement does not seem to be entirely applicable to a contract for dredging, but is applicable to the kind, quantity, and quality of articles to be delivered, and not to acts done in the performance of an agreement of excavation.
It is a most familiar principle of law that a warranty will not extend to guard against defects plain and obvious to the senses of the contracting party; but the condition of the material afforded no opportunity to the claimant to protect itself by mere observation, so that the warranty at the time it was made became operative upon the right of the parties. (Chitty on Contracts, p. 644.) The above is the noted exception to the liability growing out of a warranty.
In the case of Delafield v. The Village of Westfield (77 Hun., 124) it is held, in substance, that a note at the end of specifications for laying pipe that “The vitrified pipe line is mostly and the tunnels are entirely to be in soft shale rock” amounted to a warranty shat the material to be excavated was soft shale rock.-
It is insisted that this case is governed by Ferris v. The United States (28 C. Cls. R., 332), and that it was the duty of the claimant when it was discovered that the shoals were of a different quality of material from that specified in the contract to have notified the officer in charge and get from him such changes as could be agreed upon. In the Ferris case the contractor proceeded with the work, notwithstanding he had found a different material from what was agreed upon, relying on a statement of a subordinate officer for additional compensation. The court held in that case that the responsibilhy of the United States could not be enlarged by a subordinate officer in agreeing to pay extra for the work because of a difference in the material, and that under the circumstance it was the duty of the contractor to apply to the officer having the right to change the agreement. The findings in this case show that the claimant and the officer in charge sought to make a new agreement based upon the condition of the *483 material as it existed in fact, but the parties were unable to come to any agreement, and the result was that the claimant quit work, and other parties did the dredging at a greatly increased price.
In the trial of the cause in this, court, in reply to the contention of the defendants that the claimant had violated its agreement in the failure to perform the work, to the damage and prejudice of the defendants to the extent of the amount which the defendants were compelled to pay for the performance of the work beyond what the claimant had contracted, the claimant offered in evidence the record of a proceeding in the circuit court of the United States for the eastern district of New York, in which the defendants were plaintiffs and the claimant was defendant. The record of the case is fully set out in the findings.
To the introduction of this record and a reliance on it by the claimant'the defendants objected, for the reason that the record had not been counted on, and therefore formed no part of the claimant’s cause of action. To this contention the claimant replied that it was not matter in chief, but came into the cause by way of replication. The court holds that it is competent, by way of replication to the claim of the defendants, that the claimant failed and refused to perform its agreement, and because of that is not entitled to recover in this proceeding.
An examination of the record discloses that the suit in New York was between the same parties on the subject-matter which is the basis of the litigation in this case.
If the issue which the defendants are making in this case was decided in the case in New York,, then the defendants are estopped by the result of that ■ case, and can not now reopen what was closed by the legal effect of.that proceeding.
Estoppels, as a general rule, are not favored defenses, but when the alleged estoppel is a matter of record embodying the result of a judicial proceeding, the courts, as a matter of strict legal right and on grounds of public policy, enforce as against the parties the legal effect of that result.
There must be an end of litigation, and an issue once settled must remain so unless properly reopened.
*484 In the bill of particulars filed in that case three items of charges appear, all relating to the failure of the claimant to comply with the obligations of the contract embraced in this proceeding, and two of which relate exclusively to Shoal D and E, and for the difference in the price which was to be paid the claimant by the contract, and which the defendants were compelled to pay other parties for doing the same work.
To the claim made by the petition and specially exemplified by the bill of particulars the defendants in that case say, in substance, that upon the faith of certain representations it entered into said contract, and that in such contract it is averred that the shoal between D and E consisted “chiefly of sand, mud, and a little gravel,” whereas, in fact, that it did not so consist, but upon the contrary it consisted in a large part of tenacious clay, which was much more difficult and expensive to dredge.
It is sufficient to state in this connection that that issue was tried before Mr. Justice Wheeler and a jury, on the allegations and proofs on the part of the plaintiffs, and the jury rendered a verdict in favor of the defendant under the direction of the court, and the cause was thereupon dismissed on the merits and judgment rendered for the defendant.
In the proceeding in New York the rights of the parties were not reciprocal. The plaintiffs had the right to prosecute its action for any violation of the agreement on the part of the defendant, but the defendant was limited in the range of its judicial right to a defense in showing that it did not violate the contract, but beyond that it had no right of set-off or counterclaim. The law in its policy gave it a power to defend, but no power to attack; and hence, while it might defeat the plaintiffs, it could not succeed in establishing any affirmative right or claim against the plaintiffs. (Tillou v. United States, 6 Wall., 484.) The exercise of that right was left to the jurisdiction of this court, and it now seeks to exercise that right in the presentation of its claim, unaffected by the claim of the defendant, that it violated its agreement in the nonperformance of the contract.
Upon the whole case the claimant has the right to recover' the sum of $6,033.35, and for that amount judgment will be entered.