Hat, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
On December 18, 1912, the plaintiff entered into a contract with the defendants whereby it agreed to dredge to a depth of 35 feet below the plane of mean low water a certain section of the Delaware Eiver, designated as lower end of Mifflin Eange, Connecting Eange, and upper end of Tinicum Eange. The width of said dredging was to be 800 feet in the straight parts and 1,000 feet in the bends. The plaintiff was to receive for its work 0.1299 cents per cubic yard, scow. measurement.
The specifications, which were made a part of the contract, stated that the material to be removed is believed to be. mainly mud, or mud with an admixture of .fine sand except at certain stations which were fully described in the specifications. ' The specifications also stated that bidders were expected to examine the work and decide for themselves as to its character and to make their bids accordingly, “ as the United States does not guarantee the accuracy of this description.” Immediately following the above statement, and in the same paragraph of the specifications the following appears : “ A number of test borings have been made in all of the areas where dredging is to be done under these specifications, and the result thereof may be seen by intending bidders on the maps on file in this office. No guaranty is *498 given as to the correctness of these borings in representing the character of the bottom over the entire vicinity in which they were taken, although the general information given thereby is believed to be trustworthy.” The plaintiff before executing the contract visited the office and examined the maps referred to in the specifications.
These maps contained a record of ten borings covering the section of the Delaware River which by its contract after-wards made the plaintiff agreed to dredge. Eight of these borings, according to these maps, indicated that the only material encountered had been soft mud, or firm sandy mud, and the other two borings indicated that the material encountered was loose gravel. The maps did not indicate the time when the borings were made, nor was it stated whether the borings were core borings or wash borings, or whether the boring was done by a probe. There was nothing on the maps exhibited to bidders showing the field notes taken at the time the borings were made.
The numbers of borings covering that section of the Delaware River embraced in the contract of the plaintiff were 111 to 120, inclusive. On the map opposite numbers 111 to 120, inclusive, under the heading, “ Material,” were legends which had for their purpose the description of the material found at the places where the borings had been made. Opposite No. Ill the legend was as follows: Firm sandy mud; opposite No. 112, firm sandy mud; opposite 113 and 114, loose gravel; opposite 115 to 120, inclusive, soft mud. The map also showed that the material, as indicated above, was in each case more than 35 feet below the plane of mean low water.
The plaintiff did not examine the site of the work for itself before making its bid or before executing the contract, and had no information as to the character of the material to be dredged except that given by the defendants on the maps, to which its attention had been directed by the defendants. The borings shown on the map of the defendants were made by them in the year 1909, three years before the contract of the- plaintiff was executed.
The legends on said map did not contain a true description of the character of the material which had been, en *499 countered by the defendants when the borings were made over that section of the Delaware River which was embraced in the contract of the plaintiff. These borings disclosed material much more difficult to dredge than that described on the map shown to the plaintiff for its examination and information. At the time the borings were made by the defendants their officers who made the borings took and recorded field notes, which were set down in a book kept for the purpose. At borings 113 and 114 these field notes showed that there was impenetrable gravel, through which the probe used by those making the borings could not penetrate ; these notes were transferred to a tracing made by the defendants, but were not shown on the map which defendants exhibited to bidders for their information. The books containing the field notes as to the other borings in the section embraced in the contract of the plaintiff could not be found. It appears from the evidence in the case that the character of the material at these borings was not that shown on the map exhibited to bidders, but was of a more difficult character for dredging.
There are three kinds of borings in use to ascertain the character of material to be dredged, to wit, core borings, wash borings, and borings by forcing a rod into the bottom by hand to the necessary depth, the character of the material encountered being determined by the feel of the rod, and the location below mean low water is determined by measurements marked on the rod itself. The method of boring which determines accurately the character of material to be dredged is that known as core boring; the other two methods above mentioned do not determine accurately the character of the material to be dredged. The method used by the defendants in this case was the third method above described as to all of the borings embraced in the contract of the plaintiff, except borings 113 and 114, in which the defendants made wash borings. -
The character of the material in the area covered by the plaintiff’s contract, and which the plaintiff encountered in its work on said contract, was difficult to dredge and consisted mostly of compacted sand and gravel mixed with clay and cobbles. The plant which was brought on the work by *500 the plaintiff was inspected and approved by the defendants and was efficient for dredging the character of material which was mentioned in the specifications and described on the map to which bidders' were referred by defendants for information.
Before the plaintiff knew that at the time of the execution of the contract the defendants had knowledge that the character of the material to be dredged was different from that shown on the map exhibited to plaintiff for its information, the plaintiff on May 4, 1915, entered into a supplemental contract with the defendants by which it was agreed that all material excavated and removed under the contract, other than mud or mud with an admixture of fine sand, might be deposited in Delaware River at locations to be indicated by the contracting officer, and further agreed in consideration of the change in manner of disposal of said material that the unit prices per cubic yard should be reduced in the sum of 2 cents.
On December 15,1915, the plaintiff refused to go on with the work, although he did not then know that the map which was exhibited to bidders did not disclose a true record of the character of material which had been encountered when the borings were made. Nor did it discover this fact until after the bringing of this suit. The total amount of material actually dredged and removed by the plaintiff under the contract was 1,437,469 cubic yards, and the amount of material remaining to be dredged after the plaintiff ceased work was 400,000 cubic yards.
The plaintiff expended in the prosecution of the work the sum of $354,009.19; it received from the defendants the sum of $142,959.10, making its loss on said contract the sum of $211,050.09.
The plaintiff brings this suit for the extra cost of dredging operations under its contract with the defendants to do certain dredging in the Delaware River, and bases its claim for recovery on a charge of misrepresentation in the specifications and drawings as to the character of the material which it was to dredge and remove under the contract.
The contention turns upon the language used in the specifications, which is fully set out above. The plaintiff claims *501 that when invited to bid on the work it examined the map which was exhibited to bidders for their information by the defendants, and that said map stated that the material to be dredged was loose gravel and soft mud, but that the material which was actually to be excavated consisted of compacted sand and gravel, mixed with clay and cobbles, and that such material was more difficult and expensive to excavate and dredge than was the material described on the map; that the borings were made by officers of the defendants; that the existence of the more difficult material was known to them; that the statement in the specifications was untrue in fact, causing the plaintiff to propose to do the work upon the basis shown by the map; that the plaintiff relied wholly upon the information furnished it by the defendants; that it expended the sum of $211,050.09 over and above the amount paid it under the contract; that it was led to expend this sum of money by the untrue statements made to it, and relied upon by it; and that it had the right to rely upon these statements, and was not obliged to make any investigation for the purpose of showing that these statements were false.
We think that the evidence sustains the contention of the - plaintiff. It establishes that the borings were made by the officers of the defendant; it also establishes the fact that the defendants made specific statements as to the character of the material to be dredged, and that the material which was actually dredged by the plaintiff was different from that described in the specifications of the defendants, and that the existence of this more difficult material was known to the defendants.
It is also established from the evidence that the plaintiff relied wholly upon the information furnished it by the defendants.
It appears that there was a deceptive representation of the material to be dredged, and that the plaintiff was misled by it. The officer making the contract which we are considering was authorized to make it, and the plaintiff in its dealings with him had a right to rely on any representation made by him which related to the subject matter of the contract. The plaintiff was told that the character of the mate *502 rial was loose gravel and soft mud. That was a positive statement of the character of the material which was to be dredged, and the plaintiff had a right to rely on the representation so made, for it was so worded as to create and justify the belief that it was intended to enter into and qualify the contract. It was a representation which amounted to a warranty, particularly, as in this case, the defendants knew and spoke with authority as to the character of the material, while to the plaintiff its character was unknown, and it could not protect itself by mere observation and dealt with a material which was hidden from view.
It is contended by the defendants that the specifications did not guarantee the character of the material described, and only stated what was believed to be its character, and that the plaintiff should have made an investigation for itself and had no right to rely upon the information offered by the defendants. But the defendants in its specifications especially directed the attention of bidders to a map on file in their office which purported to disclose the character of the material to be dredged, and this map was based upon borings made by the defendants, the specifications stating: “A number of test borings have been made in all of the areas where dredging is to be done under these specifications, and the result thereof may be seen by intending bidders on the maps on file in this office. No guaranty is given as to the correctness of these borings in representing the character of the bottom over the entire vicinity in which they were taken, although the general information given thereby is believed to be trustworthy.” And on the map the character of the material is fully described, and set out with particularity. The statement thus made was unequivocal, and was set out in a document prepared for the guidance of bidders. It seems to the court that the bidder had a right to rely on information so given, and was not obliged to make an independent investigation of a fact which the Government had left in no doubt. United States v. Stage Co., 199 U. S., 414, 424. In the case of Hollerbach v. United States, 233 U. S., 165, 172, a case similar to this, where the question was as to the right of the plaintiffs to rely on state *503 ments made by the defendants in specifications, setting out the character of the material to be dredged, the court said: “ True the claimants might have penetrated the seven feet of soft slushy sediment by means which would have discovered the log cribwork filled with stones which was concealed below, but the specifications assured them of the character of the material, a matter concerning which the Government might be presumed to speak with knowledge and authority.” In this case the specifications spoke positively as to the character of the material to be dredged, and to that extent the statement must be taken as true and binding upon the Government. In its positive assertion of the character of the material the Government made a representation upon which the plaintiff had a right to rely without an investigation to prove its falsity. Hollerbach v. United States, supra.
It is, however, insisted that the falsity of the statements made in the specifications as to the character of the material was not known to the contracting officer with whom the plaintiff contracted to do the work. But as was asserted in Christie v. United States, 237 U. S., 234-242:
“ It makes no difference to the legal aspect of the case that the omissions from the records of the results of the borings did not have a sinister purpose. There were representations made which were relied upon by claimants, and properly relied upon by them, as they were positive.”
In this case not only omissions from the records of the results of the borings were made but false statements of the character of the material were placed upon the maps, which were exhibited to bidd.ers for their information, and to which their attention was directed by the defendants.
This case is to be distinguished from the case of Simpson v. United States, 172 U. S., 372, in that the alleged warranty in that case related to the surface indications of an available site open to the inspection and view of the plaintiff; but in this case the alleged warranty is as to the character of the material which was to be dredged, the composition of which was hidden from view. One related to the surface or site; the other refers to composition hidden from the view. A warranty will not extend to guard against defects plain and *504 obvious to the senses of the contracting party; but the condition of the material in this case afforded no opportunity to the plaintiff to protect itself by mere observation, so that the warranty at the time it was made became operative upon the right of the parties. Atlantic Dredging Co. v. United States, 35 C. Cls., 463.
As to the plant which was brought upon the work by the plaintiff, it was approved by the defendants as efficient, and had the character of the material been such as was described in the specifications it was sufficient to have handled the work efficiently, and it does not seem that the defendants have any right to complain.
The plaintiff refused to go on with the work after it had dredged 1,437,469 cubic yards, claiming that the specifications only called for the dredging of 1,340,000 cubic yards. Under the specifications the number of cubic yards to be dredged was, while stated in the specifications to be 1,340,000 cubic yards, only approximate and estimated as a basis for canvassing bids, and if the plaintiff did not do the dredging contemplated in the contract, and failed to excavate the material in that section of the river embraced in its contract, it could not for that reason alone excuse itself for refusing to fulfill its contract. But if the plaintiff had been induced to enter into the contract by representations as to the character of the material to be dredged, and upon which it was entitled to rely, and which turned out to be untrue, then at any stage of the work it had the right to stop work and to sue to recover for whatever amount might be justly due it for the work which it had already performed. Canal Company v. Gordon, 6 Wall, 561, 569; Atlantic Dredging Co. v. United States, 35 C. Cls., 463, 484; Lee v. United States, 4 C. Cls., 156, 163.
Upon the whole case the plaintiff has the right to recover the sum of $211,050.09, and for that amount judgment will be entered.
BarNet, Judge, and Booth, Judge, concur.