ALASKA AMERICAN LUMBER CO., INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 41–87 C.

United States Claims Court.

March 16, 1992.

Elliot T. Dennis, Anchorage, Alaska, attorney of record for plaintiff.

Gordon D. Kromberg, Dept. of Justice, Washington, D.C., with whom was the Asst. Atty. Gen., attorneys of record for defendant.

## OPINION

HORN, Judge.

This case involves the termination of a contract between the plaintiff and the United States Forest Service, United States Department of Agriculture, to harvest timber in the Tongass National Forest in Alaska. The case is presently before this court on cross-motions for summary judgment. Plaintiff, Alaska American Lumber Co., Inc. filed this action claiming damages for the alleged breach and termination of a timber sale contract, in which the defendant, the United States, acting through the United States Forest Service, granted the plaintiff the right to harvest timber from National Forest lands. According to the defendant, the facts material to this action are not in dispute. Defendant asserts that it terminated plaintiff's contract for default due to plaintiff's failure to perform contract obligations, which defendant asserts were not excused by any action of the defendant. In its Opposition to Defendant's Motion for Summary Judgment, and in its own Cross–Motion for Summary Judgment, plaintiff claims that there are genuine issues of material fact in dispute regarding the applicable terms of the contract, but, nonetheless, asserts that it is entitled to summary judgment, alleging that the defendant breached the contract between the parties.

Based on a review of the papers submitted to the court and upon the oral argument held, the court finds that the Forest Service acted in accordance with the contract terms when it terminated plaintiff's contract for failure to substantially complete the roads specified by the date specified in the contract. Moreover, the court concludes that, based upon the record,

plaintiff's failure to perform was not due to any action on the part of the United States Forest Service. Therefore, the defendant's Motion for Summary Judgment is, hereby, GRANTED, and the plaintiff's Cross–Motion for Summary Judgment is, hereby, DENIED.

## BACKGROUND

The original contract at issue in this case, which is known as the Deer Island Timber Sale Contract, Contract No. 02–011, was awarded to the plaintiff on February 13, 1979, and was originally scheduled to be completed by May 31, 1983. The contract provided the plaintiff, Alaska American Lumber Co., a Washington corporation, with the right to harvest timber from the Tongass National Forest in southeastern Alaska. The agreement required the plaintiff to construct 4.12 miles of specified roads, which were deemed to be necessary to obtain access to the timber.[1]

Plaintiff was required to provide the Forest Service with an annual, written operating schedule of its "anticipated major activities" for logging under the contract prior to commencing operations. The contract defined the "normal operating season" during which the plaintiff could perform its contractual obligations as May 1st to October 31st. The plaintiff was permitted to conduct operations outside of the normal operating season, upon compliance with two provisions which called for the satisfaction of contract conditions regarding erosion prevention and control. In addition, the plaintiff was required to submit for approval to the Forest Service a written general Plan of Operation, setting forth planned times and methods for road construction, timber harvesting and other contractual activities. The contract also provided the plaintiff with thirty (30) days in which to cure a breach of the timber sale contract. If, after notification, a breach was not remedied within the allowed time,

---

1. The specified roads under the contract are also described by the Forest Service as 4.2 miles in a March 21, 1985 letter from District Ranger Kohrt to the plaintiff's purchaser representative, R.G. Crittenden.

contract clause C9.3, gave the Forest Service the right to terminate the contract.

Prior to the termination date of the original timber sale contract, the parties entered into two subsequent final agreements to extend the contract term. Each extension was preceded by an interim modification. The first extension, for a period of two years, was requested by the plaintiff, pursuant to the Economic Recovery Act of 1981, and was finalized on August 8, 1983, following a first, interim extension modification agreement, which was executed on June 6, 1983. In the first final modification, dated August 8, 1983, the parties agreed to a new timber sale termination date of May 31, 1985, and to a road substantial completion date of May 31, 1984.

In February 1984, the plaintiff requested a second extension, this time for a period of five years, under the Multi–Sale Extension Program.[2] Pursuant to this request, the parties executed a second, interim extension agreement on April 3, 1984, which states:

> Pursuant to B8.3 and based on Purchaser's intent to submit a multi-sale extension plan in accordance with the multi-sale extension program, it is agreed that the effective date of this modification shall be the effective date of the extension of this contract under the program....

The second interim modification does not distinguish between the contract termination date and the date for substantial completion of specified roads. The second and final modification agreement or the final Multi–Sale Extension Program agreement was executed by the parties on or about September 12, 1984.[3] This final agreement, however, explicitly specifies a contract termination date of April 3, 1989, and in section C5.102$ (12/83) provides that:

> the construction of specified roads shall be substantially completed no later than April 3, 1985.

It is uncontested that on January 18, 1985, the plaintiff was declared in breach of contract for failure to pay an assessed $47,156.80 stumpage bill, in accordance with the Removal Schedule, included in clause C4.262 of the original contract. This breach was effectively cured when the plaintiff agreed to pay a revised fee of $4,919.18.

On January 29, 1985, following several delays, and at the insistence of the Forest Service, the plaintiff submitted its proposed plan of operation to the Forest Service for approval, pursuant to contract clause B6.31. The plan set forth plaintiff's anticipated activities for the 1985 operating season. The Forest Service approved the plan, on February 8, 1985, subject to the following four conditions: (1) review of and compliance with the erosion prevention and control contract provisions outlined in the contract; (2) payment of the revised removal payments bill of $4,919.18; (3) scheduling of a pre-work meeting with the Forest Service; and (4) substantial completion of specified roads by April 3, 1985, or prior to the conclusion of the period provided to cure a breach, May 30, 1985.[4]

On March 21, 1985, District Ranger Richard K. Kohrt sent a letter to plaintiff's purchaser representative, Mr. R.G. Critten-

**2.** In early 1980, after a period of steady growth, the market for forest products declined substantially leaving many timber companies with contract obligations requiring timber purchase payments far above the going market value of the timber. The Forest Service responded to the problem by liberalizing extensions of contract deadlines. The Multi–Sale Extension Program was enacted in July 1983, in response to the economic difficulties facing the timber industry. The program authorized the Secretary of Agriculture to extend certain timber sale contracts beyond existing termination dates, for a maximum period of five years. To be eligible for an extension, a contract had to meet certain initial requirements, and the purchaser had to submit a satisfactory harvest completion plan. *See Sierra Pacific Indus. v. Lyng,* 866 F.2d 1099, 1103–04 (9th Cir.1989); *Cedar Lumber, Inc. v. United States,* 13 Cl.Ct. 547, 548 (1987).

**3.** Both parties describe the signing date for the second and final modification to the contract as occurring on or about September 12, 1984.

**4.** Clause B9.3(a) of the original contract provided the plaintiff with 30 days during the regular operating season, May 1st to October 31st, to cure any breach requiring action on the ground.

den, informing him that the plaintiff's operating plan would not be approved unless the Forest Service was assured that plaintiff had sufficient equipment on hand to complete the road construction work prior to May 30, 1985, or, in other words, within the period of time allowed for substantial completion and cure of a breach of the date set for substantial completion of the roads. Plaintiff maintains that this letter was instrumental in preventing plaintiff from rendering its contractual performance, as specified. The letter contains the following language:

> In light of our discussion this morning concerning the Deer Island Timber Sale Contract No. 02–011, I would like to reemphasize that I cannot approve an Annual Operating Plan that will not show that the specified road will be completed by April 3, 1985. (Contract Clause No. C5.102 (12/83)), or within the 30–day allowance that you will have to remedy the breach of contract (Clause B9.3 and C9.3).
>
> At this time, I consider the sale to be in breach of contract as we both know that you cannot start and complete the 4.2 miles of specified road system before the April 3, completion date.
>
> This means that I will not approve the start of operations on Deer Island, unless I am assured that sufficient equipment is on hand to complete the work prior to the May 30, 1985, date that the sale will be in default.
>
> Please keep this in mind as you put together the annual operating plan you plan to submit for my approval. You have the right to appeal my decision under the C9.2 Disputes clause of the same contract.

In addition, plaintiff maintains that its performance was foreclosed by statements made by District Ranger Kohrt to plaintiff's logging subcontractor, Mr. Nearing, during a pre-work meeting. In the affidavit supplied by contract representative Robert Crittenden, plaintiff alleges that, "Mr. Kohrt advised Mr. Nearing that he would not permit the sale to be operated because the road completion could not occur by May 30, 1985. Accordingly Mr. Nearing refused

to make any effort to perform the contract between he [sic] and Alaska American Lumber."

Plaintiff concedes that it did not complete, nor commence, construction of the specified roads or timber harvesting by April 3, 1985. The Forest Service sent written notice of plaintiff's failure to perform on April 4, 1985, and notified plaintiff that it had until May 31, 1985 to correct the breach by substantial completion of the roads. This allowed plaintiff a total of fifty-six days to cure the breach, thirty days of which were within the normal operating season, as required by clause B9.3(a) of the original contract.

Pursuant to clause C9.2 of the contract, plaintiff filed a claim for damages on October 23, 1985 with the contracting officer. Plaintiff sought a determination that defendant wrongfully had breached its contract and asked for damages in the sum of $1,272,615.00. The contracting officer, Forest Supervisor Robert E. Lynn, denied plaintiff's claim on January 24, 1986.

Plaintiff commenced this action in the United States Claims Court, and cites to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1982), as the basis for jurisdiction. Plaintiff claims money damages in the sum of $1,317,000.00, plus interest and attorneys fees, resulting from the alleged breach and wrongful termination of its contract with the defendant. The plaintiff claims that the Forest Service improperly imposed a termination date inconsistent with the contract, federal regulations, statutes and other applicable requirements. The plaintiff was held in breach of the contract based upon what plaintiff maintains was a substantial road completion date different from the plaintiff's prior verbal and written understanding with defendant. Plaintiff alleges that it will show that defendant breached the contract in other ways which plaintiff claims, in its Complaint, "will be proven at the time of trial."

In response, the defendant has denied any wrongful termination on its part and has cited to the clear language contained in

the contract, and attached modifications signed by the plaintiff, as support for its position. The defendant filed a Motion for Summary Judgment asserting that there are no genuine issues of material fact in dispute and that there is an absence of evidence to support the plaintiff's case. In support of its motion, defendant argues that the second final contract extension agreement explicitly changed the date for substantial completion of the roads to April 3, 1985, that the plaintiff failed to render performance by that date, and that the plaintiff's breach was not due to any act of the defendant. Defendant asserts, therefore, that it was justified in terminating its contract with plaintiff and that summary disposition of this action is appropriate.

The plaintiff, in its Opposition to Defendant's Motion and Cross–Motion for Summary Judgment, requests summary judgment, but, at the same time, also alleges that there are genuine issues of material facts in dispute which should preclude this court from granting the defendant's motion. Plaintiff disputes the accuracy of the applicable termination dates and alleges that the termination dates were made difficult to understand and confusing by the language of the interim extension agreement, signed on April 3, 1984. Plaintiff asserts that the interim modification, dated April 3, 1984, was executed in order to augment the first extension of the original timber sale contract, allegedly to May 31, 1989, which would have been an additional five-year extension from May 31, 1984, the date to which a previous extension had been granted. Plaintiff also asserts that the extension for substantial completion of the roads began not at the time of the second interim agreement, April 3, 1984, but one year from the time of execution of the final second modification to extend the contract, "on or about" September 12, 1984. Thus, according to the plaintiff, the roads were to be substantially completed "on or about" September 12, 1985. Plaintiff attempts to bolster its arguments by asserting in its brief in opposition to defendant's Motion for Summary Judgment, that its interpretation also is based upon a prior verbal understanding with the Forest Service and on general understandings within the industry.

In its Cross–Motion for Summary Judgment, plaintiff also asserts that the defendant unjustifiably breached the timber sale contract and prevented plaintiff from performing. Plaintiff claims that the defendant wrongfully interfered with the contractual relationship between the plaintiff and its logger, that the March 21, 1985 letter from District Ranger Kohrt effectively foreclosed plaintiff's performance under the contract and that the defendant incorrectly imposed upon plaintiff and its logger a "completion" date, rather than the "substantial completion" date, as plaintiff alleges was required by the contract.

In its opposition to plaintiff's Cross–Motion for Summary Judgment, defendant argues that the Forest Service did not require completion of the road construction earlier than was contractually required. Further, defendant argues that plaintiff is not contractually entitled to further time extension for road completion because of its temporary default of plaintiff for failure to pay its stumpage bill. The defendant also argues that it used the correct standard of substantial road completion under the contract. Finally, the defendant asserts that it did not prevent road construction by refusing to allow commencement of the operation.

Plaintiff then filed a Reply to defendant's Opposition to its Cross–Motion for Summary Judgment in which it argued that defendant prevented road completion and performance under the contract by imposing the wrong date for substantial completion. Finally, plaintiff alleges it was coerced into signing the second interim agreement in order to qualify for the Multi–Sale Extension Plan, that it received no consideration for signing this document and that the second interim modification agreement contained ambiguous language.

## DISCUSSION

Summary judgment in the United States Claims Court is properly granted only when there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of the Rules of the United States Claims Court (RUSCC) is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language.[5] Both Rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RUSCC 56(c); Fed.R.Civ.P. 56(c). RUSCC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. Voluntary Employees' Beneficiary Assn. Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991).

■ As stated in *Webster University v. United States*, 20 Cl.Ct. 429 (1990):

An issue is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant, *see, e.g., Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir.1987), while the materiality of a fact is determined by reference to applicable legal standards. *Id.*, 833 F.2d at 1567.

*Id.* at 432 (emphasis deleted). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990). The nonmovant must do more than merely raise some doubt as to the existence of a fact; the nonmovant must make a showing sufficient to require submission of the factual dispute to a jury or judge. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557 (Fed.Cir.1988).

■ Moreover, the facts presented must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. at 147, 90 S.Ct. at 1603. If the moving party has carried its initial burden of showing that there is no genuine issue of material fact, then the nonmoving party bears the burden to present "specific facts showing that there is a genuine issue for trial." RUSCC 56(f); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Uniq Computer*, 20 Cl.Ct. at 228 (stating that the nonmovant "must proffer countervailing evidence sufficient to create a genuine issue of material fact"); *and Spirit Leveling Contractors v. United States*, 19 Cl.Ct. 84, 89 (1989) (stating that the party opposing the motion must "prove by sufficient evidence that a genuine issue of material fact positively remains").

■ When making a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a sufficient disagreement to require submission to fact finding or whether

---

**5.** Since RUSCC 56(c) is closely patterned upon Fed.R.Civ.P. 56(c), precedent under the Fed. R.Civ.P. is relevant to interpreting RUSCC 56(c). *See Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356. If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court added an additional provision to the long standing summary judgment guidelines outlined above when it indicated that the initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged, if the moving party can show, alternatively, that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2553; *see also Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If the moving party makes this showing, the burden is then on the nonmoving party to present evidence in support of its case and show that a genuine factual dispute exists by making a showing sufficient to establish the existence of an element of its case upon which it bears the burden of proof. *Lima Surgical Assoc.*, 20 Cl.Ct. at 679. The logic behind this addition is simple. If under no scenario can the nonmoving party present the necessary evidence to support its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further pro-

ceedings. Under Rule 56, the motion for summary judgment may be made by the moving party and succeed, whether or not accompanied by affidavits and other documentary evidence in addition to the pleadings already on file. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and other admissions, in order to show that a genuine issue for trial exists. *Celotex v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. The type of evidence provided by the party opposing summary judgment need not meet the standards for admissibility at trial. The nonmovant, however, must produce evidence beyond the mere pleadings to survive the summary judgment motion and proceed to trial. *Id.*

The fact that both parties have moved for partial or full summary judgment, based on the alleged absence of genuine issues of material fact, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)); *Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981) (holding that it is inappropriate to conclude that because both sides moved for summary judgment that both concede that the case is ready for disposition); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976); *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party

whose motion is under consideration. *Mingus Constructors, Inc. v. United States,* 812 F.2d at 1391.

In the present case, defendant moves for summary judgment based on its theory that the contract between the parties is unambiguous and based on its interpretation that, as a matter of law, April 3, 1985 was the date for substantial completion of the roads under the contract, as amended, and that the plaintiff failed to meet its contractual duties by that date. The defendant, therefore, contends it did not breach the contract when the government defaulted plaintiff for failure to perform. The plaintiff, however, disputes defendant's interpretation and reliance on the contract provisions contained in the September 1984 second final extension agreement, because plaintiff claims it lacked knowledge and was unaware of the specific terms of the agreement. Plaintiff claimed, explicitly for the first time at the oral argument, that it had not read the contract before signing it, or, in the alternative, that the new version of the contract it received for signing did not contain certain key paragraphs. Lastly, plaintiff contends that its performance was prevented by acts of the defendant. Therefore, in the instant case, this court must look to the substantive law which governs the interpretation of contracts. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 254, 106 S.Ct. at 2513.

The interpretation of a government contract is a matter of law, *Hol-Gar Mfg. Corp. v. United States,* 351 F.2d 972, 973, 169 Ct.Cl. 384, 386 (1965), and the language of the contract must be given the meaning that would be derived from the contract by a "reasonably intelligent person acquainted with the contemporaneous circumstances." *Id.,* 351 F.2d at 975, 169 Ct.Cl. at 388.

Only when a contract is ambiguous will factors outside of the contract terms be taken into account. *See Sylvania Electric Products, Inc. v. United States,* 458 F.2d 994, 1005, 198 Ct.Cl. 106, 126 (1972). "[W]hen the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances, such as prior negotiations or custom of the trade

for its interpretation." *Peterson–Sharpe Eng'g Corp. v. United States,* 6 Cl.Ct. 288, 295 (1984) (citing *David Nassif Assocs. v. United States,* 557 F.2d 249, 256, 214 Ct.Cl. 407, 419–20 (1977)); *Sea–Land Service, Inc. v. United States,* 553 F.2d 651, 658, 213 Ct.Cl. 555, 567 (1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 724, 54 L.Ed.2d 755 (1978); *Sylvania Elec. Products, Inc. v. United States,* 458 F.2d 994, 1005, 198 Ct. Cl. 106, 126 (1972); *Northwestern Industrial Piping, Inc. v. United States,* 467 F.2d 1308, 1314, 199 Ct.Cl. 540, 550–51 (1972); *Perry & Wallis, Inc. v. United States,* 427 F.2d 722, 725, 192 Ct.Cl. 310, 315 (1970) (citing *Duhame v. United States,* 119 F.Supp. 192, 195, 127 Ct.Cl. 679, 683 (1954)).

A contract is unambiguous when it is reasonably open to only one interpretation. *Technical Consultant Services, Inc. v. Lakewood Pipe of Texas, Inc.,* 861 F.2d 1357, 1362 (5th Cir.1988) (citing *Richland Plantation Co. v. Justiss–Mears Oil Co.,* 671 F.2d 154, 156 (5th Cir.1982)). Stated differently, a contract may be found to be ambiguous if the provisions under scrutiny reasonably may be interpreted in at least two ways. *Sun Shipbuilding & Dry Dock Co. v. United States,* 393 F.2d 807, 815–16, 183 Ct.Cl. 358, 372 (1968). Or, a contract is ambiguous when it sustains the interpretations advanced by both parties to the suit. *Avedon Corp. v. United States,* 15 Cl.Ct. 771, 776 (1988) (citing *Max Drill, Inc. v. United States,* 427 F.2d 1233, 1245, 192 Ct.Cl. 608, 627 (1970)).

When interpreting the language of a contract, a court must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed. Cir.1985); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir. 1983). Moreover, when making a determination of the existence of an ambiguity, if one contract refers to or incorporates the provisions of another contract, both contracts should be construed together to determine the meaning of the terms and the intent of the parties. *Chicago Pneumatic*

*Tool Co. v. Ziegler*, 151 F.2d 784, 795 (3d Cir.1945).

The parol evidence rule demands that contract interpretation be unaffected by the contentions of one of the parties that he or she meant something else. "The unexpressed, subjective, unilateral intent of one party is insufficient to bind the other contracting party, especially when the latter reasonably believes otherwise." *Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551, 195 Ct.Cl. 21, 30, (1971), *later proceeding, Firestone Tire & Rubber Co. v. United States*, 196 Ct.Cl. 807 (1971); *Singer–General Precision, Inc. v. United States*, 427 F.2d 1187, 1193, 192 Ct.Cl. 435, 446–47 (1970). "The purpose and essence of the rule is to avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract." *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988).

The defendant moves for summary resolution based on its contention that no ambiguity exists in the contract. If it can be determined that, based on the clear meaning of words within the four corners of the contract, a distinctive period of performance and a date certain for substantial completion of road construction is defined, then the court is confronted with a purely legal issue and is free to dispose of this case in a summary judgment proceeding. *See Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

In the instant case, the court must look both to the words of the second interim and the second final modification, as the latest expressions of the parties' intent, to determine if an ambiguity exists as to the date specified for road substantial completion and contract completion. However, even if the contract is unambiguous, the plaintiff may still prevent an award of summary judgment in the defendant's favor, if the plaintiff can show that there is a factual dispute as to whether the defendant acted in some way during the operation of the contract to prevent the plaintiff's performance.

The original contract signed by the parties, dated February 19, 1979, did not include an agreed upon date for substantial completion of the roads. The original contract, was modified, however, by two subsequent final modification agreements, in August 1983 and September 1984, each of which was preceded by an interim modification. The first final amendment set the date for substantial completion of the roads for May 31, 1984, which date is not in dispute. The issue presented to this court is whether the contract language, as modified, utilizing the words of the second interim agreement, and of the second final agreement, extended that date for substantial completion of the roads to April 3, 1985, as alleged by defendant, or extended that date to September 12, 1985, as asserted by the plaintiff. The court finds that a reading of the relevant provisions of the contract at issue does not support plaintiff's position. The defendant maintains in its Motion for Summary Judgment that the second, final modification agreement, signed on or about September 12, 1984 sets the date for substantial completion of specified roads as April 3, 1985, and is controlling. Moreover, the defendant asserts that the plain and ordinary meaning of contract provision C5.102# (12/83) is clear. According to defendant, the plaintiff's failure to complete the specified roads by April 3, 1985, constituted a failure to perform under the contract and, therefore, in accordance with the clear provisions of the contract, defendant was entitled to terminate plaintiff's contract for default. This court agrees with the defendant.

The original, February 19, 1979 timber sale contract between the parties provides, in clause B5.2, that, "[p]urchaser shall construct specified roads used under this contract." The original contract also provides, in clause A23, as follows: "The following listed special provisions are attached to and made part of this contract as Division C. Unless listed herein or added by modification ... no provision of Division C shall have force or effect." Paragraph three of the first final contract modification, signed on August 8, 1983, added to the list of special provisions in the original contract,

signed February 19, 1979, Clause C5.102# (10/81), which provides that "[c]onstruction of Specified Roads shall be Substantially Completed no later than May 31, 1984".[6] The second final modification, which was the last modification to the contract between the parties, was signed in September 1984, and added to the list of special provisions clause C5.102# (12/83). Clause C5.102# (12/83) provides that, "[c]onstruction of Specified Roads shall be Substantially Completed no later than April 3, 1985." [7] The second final contract modification also explicitly deletes from the list of special provisions, the earlier clause C5.102# (10/81), which required substantial road completion by May 31, 1984.

It is uncontroverted by the parties that plaintiff's authorized officers signed the second final contract modification in September 1984. Moreover, at no point has the plaintiff alleged that there was any fraud involved in this case. Plaintiff maintains, however, that this contract modification caused confusion, and that it felt compelled to sign the interim agreement in order to qualify for the Multi–Sale Extension Plan. Additionally, plaintiff maintains that, although its officers signed the second final modification agreement, plaintiff was not aware of, and, to its knowledge, cannot confirm that it received the clauses which were added to the contract's list of special provisions by the final modification to the contract.

It is well settled that "[a] person's signature on a written instrument normally indicates assent to the terms of that document." *Carpenter v. United States*, 4 Cl.Ct. 705, 714 (1984) (citing *Rossi v. Douglas*, 203 Md. 190, 199, 100 A.2d 3, 7 (1953); 1 S. Williston, A Treatise on the Law of Contracts, § 90 A (3d ed. 1957)). Even failure to read a document before signing it does not enable one to ignore the obligations imposed by that document. *Id.* at 720. As pointed out in *Fraass Surgical Mfg. Co. v. United States*, 571 F.2d 34, 40, 215 Ct.Cl. 820, 830 (1978):

> The testimony of plaintiff's president that he did not read the contract in 1966, because contracts that he had signed in 1963 and 1960 had contained the other clause, is irrelevant and unacceptable. He is an experienced businessman and should know better. [Citation omitted.]

*See also St. Petersburg Bank & Trust Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971). Furthermore, absent a showing of fraud or mental incompetence, one who reads a document, or signs it even without reading it, is bound by its terms. *Coleman v. Prudential Bache Secur., Inc.*, 802 F.2d 1350, 1352 (11th Cir.1986) (citing *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir.1985); *Donovan v. Mercer*, 747 F.2d 304, 308 n. 4 (5th Cir. 1984)). Over a century ago, in 1875, the Supreme Court stated: "[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875). The court, therefore, finds that by signing the September 1984 final modification, plaintiff voluntarily assented to the terms of the contract, as modified, and declared its intention to be bound by those terms.

---

6. The term "substantially completed" is defined in the original contract signed February 13, 1979 in clause B5.23, as "(a) completion of grading and installation of drainage structures so they will function effectively, and (b) laying the specified depth of the base course, if any, unless physical conditions make it impractical or ground conditions permit hauling without undue damage".

7. *C5.102#—Road Completion Date* (12/83). Construction of Specified Roads shall be Substantially Completed no later than April 3, 1985.

When Purchaser requests Contract Term Adjustment under B8.21, completion dates shall be adjusted by number of days which qualify for such adjustment, provided such qualifying days occur before Specified Road construction completion date established above. Completion date shall be adjusted where a design change, or physical changes necessitate a modification of Specified Road construction work which substantially increases the scope of magnitude of the required work.

Plaintiff also points to the language of the second interim modification, signed on April 3, 1984, which states: "Pursuant to B8.3 and based on Purchaser's interest to submit a multi-sale extension plan in accordance with the multi-sale extension program, it is agreed that the effective date of this modification shall be the effective date of the extension of the contract under the program...." The plaintiff seems to argue that this language is ambiguous and created the confusion regarding the final date for substantial completion of the roads at issue. This argument of plaintiff's must fail. The second interim agreement was specifically superseded by the second final modification, signed on or about September 12, 1984, which explicitly recites an April 3, 1985 date for substantial road completion.

■ But, even if the court were to have found that an ambiguity existed in the contract terms, the court could also conclude in the instant case that the plaintiff had failed to meet its burden to inquire as to the meaning of the ambiguity and that therefore the defendant should nonetheless prevail. Where an ambiguity exists in the contract terms that is patent and glaring, that party is obligated by an affirmative duty to seek clarification. *See Avedon Corp. v. United States,* 15 Cl.Ct. at 777 (citing *Newsom v. United States,* 676 F.2d 647, 650, 230 Ct.Cl. 301, 303 (1982); *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456, *aff'd without op.* 785 F.2d 325 (Fed.Cir.1985)).

■ The references in each of the modifications to additions and deletions in the original contract and in preceding modifications are specific and unambiguous. Likewise, the language of the final modification is absolutely clear regarding the April 3, 1985 substantial completion date for the roads. The second final modification, signed on or about September 12, 1984, contains on its face page, a list of provisions to be deleted and to be added. This is also the same page which contains the signatures of both the plaintiff's and defendant's representatives. In the second final modification agreement, included in the list of provisions to be deleted from the list of

Special Provisions is provision C5.102# (10/81) which was in the first final modification agreement, and which recites the May 31, 1984 date for substantial completion of the records. The second final modification agreement also contains a list of Special Provisions to be added to the newly modified contract between the parties, including provision C5.103# (12/83), which specifically recites the April 3, 1985 date. If the plaintiff was, in fact, not in possession of the language of the additional modifications provisions added by the second final contract agreement when it signed it, the plaintiff was on full notice of the fact that contract provision C5.102 had been modified again and that the old C5.102 from the first final contract agreement modification had been deleted.

If, because of the deletion of the May 31, 1984 date, there existed an ambiguity in the mind of the plaintiff as to what the operative date for substantial road completion date now was intended to be as a result most recent of the contract changes, the plaintiff was under a duty to inquire and to try to clear up the possible confusion, prior to affixing its signatures to the contract modification. The record is devoid of any evidence, by affidavit or otherwise, to indicate that the plaintiff ever made an attempt to obtain the allegedly missing paragraphs of the September 1984 second final modification, despite the fact that the contract clearly refers to the newly added and deleted contract provisions in the second final modification agreement.

■ Plaintiff also attempts to argue that the April 3, 1985 substantial road completion date included in the second final contract modification should be set aside due to what plaintiff claims was a prior verbal understanding with the United States Forest Service. As discussed above, the law is clear that prior understandings cannot be used to alter the meaning of an otherwise unambiguous contract. The plaintiff has failed to make a convincing evidentiary showing that any understandings existed. The record before the court is silent as to what were the specific discussions with the Forest Service on

which plaintiff relies to support its argument that the plain meaning of the final agreement, as signed, should be disregarded. In its Cross Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment, plaintiff tries to offer the affidavits of Eugene Graf, President of Alaska American Lumber Co., and Albert Dennis, Secretary of the corporation, to bolster its argument based on the alleged prior verbal understanding. By way of example, the Dennis affidavit states the following:

> It was my understanding from speaking with the Forest Service that if we applied for the five year extension, we would have five years from the date the extension was granted to complete the sale. I also understood that under the five year extension program we would have one year from the date the extension was granted to substantially complete the road system.... I did not understand what the need for document [the April 3, 1984 interim extension agreement] was, nor did I understand that by signing that document the one year time period for substantially completing the roads would start to run. This is in direct conflict with my understanding that we would receive one additional year to complete the road from the time the extension was granted.

Strangely enough, the Dennis and Graf affidavits utilize almost identical language, although there are very minor and insignificant word differences in the two most relevant sections of the affidavits.

Plaintiff also seems to suggest that its own understanding of the length of the contractual time extension for substantial completion of the specified roads is supported by "general understandings" within the timber industry. As stated by the plaintiff in its papers: "These times would begin to run as soon as the multi-sale extension was granted, after all the documents were executed. This understanding was based upon discussions with the FS [Forest Service] and general understandings within the industry."

A review of the record, as presented in the papers submitted by the parties and in the arguments presented orally before the court, does not support the plaintiff's position. Beyond vague generalizations offered by the plaintiff, there is no evidence to suggest that there was ever a reasonable basis for plaintiff to conclude that the Forest Service intended to alter the plain language of the Clause C5.102# (12/83) of the September 1984 modification to the contract between the parties. In fact, in all the correspondence between the parties which mentions the date for substantial completion of the specified roads, the defendant consistently references the April 3, 1985 substantial road completion date. The record evidences that at least eight letters referencing the April 3, 1985 date were exchanged between the parties from July 1984 and May 1985.

Of particular note is the January 30, 1985 letter sent by Mr. Dick Inglis, the plaintiff's corporate president, to Forest Supervisor Robert E. Lynn, discussing the date for substantial completion of the roads. In response to Mr. Inglis' inquiry, on January 30, 1985, Mr. Lynn answered as follows:

> As I explained to you, the April 3 date established by the Interim Modification is the date you must have substantially completed system roads on this sale. If you have not met this requirement under the provisions of the Multi-Sale Extension Agreement, you will again be in breach. Under C9.3 of the contract you will have 30 days within the normal operating period to correct this breach. The contract defines the normal operating period as May 1 to October 30. In summary if you have not met the requirements of C5.102# on April 3, 1985, you will be notified of a breach of contract. Under C9.3 if a breach is not remedied within the time limits specified, the Forest Service may terminate the contract for default. You must have corrected this breach by May 30, 1985, to avoid having defaulted the contract.

Following notification of plaintiff's breach, Mr. Inglis again wrote to Mr. Lynn, on April 10, 1985 and April 24, 1985, about

the road substantial completion date. In separate responses to both letters, on April 10, 1985 and on April 30, 1985, Mr. Lynn reasserted the defendant's position that under the contract, as modified by the parties, the roads were to be substantially completed no later than April 3, 1985, or within a 30–day cure period ending May 30, 1985, and that no further contract term adjustment was appropriate.

The defendant has steadfastly relied on and referenced the April 3, 1985 date as the only correct date under the contract, as modified, for substantial completion of the specified roads. Plaintiff's allegations to the contrary are unsupported by the record. The April 3, 1985 date was consistently referenced in the correspondences between the parties and is contradicted only by plaintiff's vague, indefinite allegations. As discussed more fully above, in a summary judgment proceeding, the nonmovant must make a showing, beyond merely raising some doubt as to the existence of a fact, sufficient to require submission of the factual dispute to the finder of fact. *Avia Group Int'l., Inc. v. L.A. Gear California, Inc.*, 853 F.2d at 1560. Plaintiff has failed to make such a showing.

Finally, plaintiff asserts that not only was the contract, as modified, ambiguous, but the interim agreement of April 3, 1984 was not required by any regulations, was not requested by plaintiff and was not supported by any consideration. In its brief and at oral argument, plaintiff claims that the interim agreement, executed on April 3, 1984, should be considered null and void. At the same time, however, it is interesting to note that plaintiff also relies on this interim agreement as central to its argument that the contract is ambiguous.

As discussed earlier, the parties entered into two final modifications of the original contract agreement, on August 8, 1983 and on or about September 1984. Prior to each of these finalized modifications, the parties entered into two interim modifications on June 6, 1983 and April 3, 1984. It is undisputed that the last contract entered into by the parties was the second final modification of September 1984 which, in provision C5.102# (12/83), set the April 3, 1985 date for substantial completion of specified roads. The September 1984 modification specifically deletes the prior date, set by the first modification, and became the final expression of the intent of the parties setting the date.

 There is no limitation on parties' ability to modify contracts. "Those who enter a contract may take steps at any time after its execution to modify it." *Montana Power Co. v. United States*, 8 Cl.Ct. 730, 736 (1985) (citing *General Dynamics Corp. v. United States*, 558 F.2d 985, 990, 214 Ct.Cl. 607, 617 (1977)); *see also Pinewood Realty Ltd. Partnership v. United States*, 617 F.2d 211, 215 n. 11, 223 Ct.Cl. 98, 105, n. 11 (1980) (citing *General Dynamics Corp. v. United States*, 558 F.2d 985, 990; *Langoma Indus., Inc. v. United States*, 135 F.Supp. 282, 285, 133 Ct.Cl. 248, 253 (1955)).

 Although a contract clearly may be modified, the general rule is that the original contract stays in force, except as modified. *Hauben v. Harmon*, 605 F.2d 920, 925 n. 2 (5th Cir.1979) (citing 17 Am. Jur.2d Contracts § 459). It is also well settled law that: "[a]ny contract, however made or evidenced, can be discharged or modified by subsequent agreements of the parties. No contract whether oral or written can be varied, contradicted or discharged by an antecedent agreement." *Carolina Metal Products Corp. v. Larson*, 389 F.2d 490, 494 (5th Cir.1968) (quoting from 3 Corbin § 574 (1960)); *see also West India Industries, Inc. v. Tradex, Tradex Petroleum Services*, 664 F.2d 946, 949 n. 4 (5th Cir.1981) (citing 3A Corbin, *Corbin on Contracts* § 574 at 371 (1960)). In order to be enforceable, however, every modification to a contract must be supported by consideration. *Montefiore Hosp. Ass'n v. United States*, 5 Cl.Ct. 471, 476 (1984) (citing *Vulcanite Portland Cement Co. v. United States*, 74 Ct.Cl. 692, 705 (1932)).

 "A contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term of the earlier contract".

*Bechtel Corp. v. Laborer's Int'l Union*, 544 F.2d 1207, 1213 (3d Cir.1976) (quoting Restatement of Contracts § 408 (1932)). Furthermore, when the subject matter of one contract is subsumed in another, the latter becomes "the exclusive medium of ascertaining the contract by which the parties bound themselves". *Puretest Ice Cream, Inc. v. Kraft, Inc.*, 806 F.2d 323, 325 (1st Cir.1986) (quoting *McCaskey Register Co. v. Curfman*, 45 Ind.App. 297, 90 N.E. 323, 326 (1910)). The earlier contract terms disappear and do not "remain to exert some wraithlike influence on what otherwise would be clear, unambiguous meaning." *Puretest Ice Cream, Inc. v. Kraft, Inc.*, 806 F.2d at 325.

▮ Plaintiff's contention that there was a lack of consideration for the April 3, 1984 interim agreement, thus, making it null and void is unfounded. Moreover, the court reiterates its failure to understand why plaintiff seeks to have the second interim agreement declared null and void when the plaintiff relies solely on this document to assert its central claim of contract ambiguity. By signing both the second interim and second final modification agreement, plaintiff obtained the right to extend the term of its timber sale contract an additional five years, a clear benefit to the plaintiff corporation. For its part, the defendant received the original purchase price and plaintiff's promise to build specified roads by April 3, 1985. The court is convinced that in the instant case adequate consideration was exchanged, and particularly received by the plaintiff, as a result of the modifications to the original contract agreement, by providing the plaintiff with a time extension to complete road construction and additional time to complete its contract obligations. *See Sam Bonk Uniform & Civilian Cap Co. v. United States*, 230 Ct.Cl. 926, 928 (1982).

In support of its Cross–Motion for Summary Judgment, plaintiff asserts an additional theory that the Forest Service prevented or hindered plaintiff's contractual performance. It is "an implied provision of every contract, whether it be between individuals or between an individual and the Government, that neither party to the contract will do anything to prevent performance thereof by the other party or that will hinder or delay him in performance." *Wah Chang Corp. v. United States*, 282 F.2d 728, 733–34, 151 Ct.Cl. 41, 49 (1960) (quoting *George A. Fuller Co. v. United States*, 69 F.Supp. 409, 411, 108 Ct.Cl. 70, 94 (1947)); 3A Corbin, Contracts § 571 (1960).

▮ Plaintiff alleges that a letter from District Ranger Kohrt to plaintiff's purchaser representative, dated March 21, 1985, and discussions between District Ranger Kohrt and plaintiff's logger, during a pre-work meeting on March 21, 1985, to the effect that "the sale could not be operated and that he should return to Idaho," hindered plaintiff from commencing operations. The plaintiff relies on the affidavit of its contract representative, Mr. Robert Crittenden, to support its theory that District Ranger Kohrt "ran-off" the plaintiff's logger. To refute the allegation, it is useful to refer at some length to the Crittenden affidavit which states:

7. On March 21, 1985, I had a meeting with Ranger Kohrt in Wrangell along with Mr. Nearing, an Idaho logger and road builder whom Alaska American Lumber had contracted with to construct the road and log the timber. This was a pre-work meeting to discuss management of the operation of the sale and to coordinate with the Forest Service. Ranger Kohrt though expressing significant concern about the ability to complete the road construction before May 30, 1985, did not indicate any intent to withhold his approval of the general operating plan and the meeting was adjourned. Mr. Nearing was to commence work on the job by going to the timber sale site the following day. I returned to Seattle that evening. Within a day or two I was notified by Mr. Nearing that Mr. Kohrt had met with him by going to his motel room in Wrangell that evening. At that time Mr. Kohrt advised Mr. Nearing that he would not permit the sale to be operated because the road completion could not occur by May 30, 1985. Accordingly Mr. Nearing refused

to make any effort to perform the contract between he and Alaska American Lumber.

8. Because of what the Forest Service told Mr. Nearing he was unwilling to commence road construction or logging on the sale, and since Mr. Nearing backed out of the construction and logging contract, it was a foregoing conclusion that Alaska American Lumber was not going to be able to perform the road construction obligation by May 30, 1985.

9. Mr. Kohrt was insistent in my March 21, 1985 discussions with him that the road had to be 'complete' vs. 'substantially complete' by May 31, 1985.

10. After Mr. Kohrt's March 21, 1985 letter, it was clear that I could not commence road building on the sale without his consent even though the completion date to cure defaults was May 30, 1985. However, if efforts to operate the sale had [sic] be taken without Forest Service permission, a stop work order would have been issued.

11. If Mr. Kohrt had not 'run off' Mr. Nearing, I believe the road would have been 'substantially completed' before May 30, 1985.

Mr. Crittenden's affidavit reveals that he, the declarant, was not present at the meeting between District Ranger Kohrt and plaintiff's logger. At the time of the meeting, Mr. Crittenden states that he was in transit to Seattle. Therefore, the information relied on by the plaintiff in the affidavit submitted by Mr. Crittenden describing the discussions between Mr. Kohrt and plaintiff's logger, is inadmissible under RUSCC 56(f) relating to summary judgment because it was not based on the personal knowledge of the affiant. RUSCC 56(f) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." Similarly, Rule 602 of the Federal Rules of Evidence provides that: "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

■■■ This court is satisfied that neither the letter nor the conversation could have, or did, preclude plaintiff's performance. Rather, the letter is conditioned upon plaintiff's assurances that sufficient equipment would be on hand for plaintiff to fulfill its contractual obligations. In fact, by its very terms, the letter does not foreclose future performance, but outlines the conditions under which the contract performance could go forward. The March 21, 1985 letter, addressed to Mr. Crittenden and signed by District Ranger Kohrt, states that "I [District Ranger Kohrt] will not approve the start of operations on Deer Island, unless I am assured that sufficient equipment is on hand to complete the work prior to the May 30, 1985, date that the sale will be in default."

District Ranger Kohrt's letter followed the terms of the contractual agreement, as modified. Under provisions C6.3 and C6.30 of the September 1984 modification, as well as under provisions C6.3 and C6.31 of the original February 1979 agreement, the plaintiff was required, prior to commencing operations, to submit for approval an annual, written operating schedule of anticipated major activities, including planned periods for and methods of road construction and timber harvesting. Ranger Kohrt's letter in no way prohibited the possibility that a plan of operations would be approved. Rather, Ranger Kohrt conditioned approval upon the plaintiff's ability to complete contract performance within the contract period, or the period provided by the contract to cure breach, by having sufficient equipment on hand.[8]

---

8. Plaintiff also relies on the March 21, 1985 letter to assert that its Cross–Motion for Summary Judgment should be granted because the Forest Service incorrectly relied on a "completion" standard rather than the "substantial completion" standard, when it terminated plaintiff's contract. Plaintiff readily concedes, however, that at other times the Forest Service clearly had used the "substantial completion" standard and seemed to concede at oral argument that the defendant had also utilized the substantial completion standard when it made its determi-

The court, therefore, finds that the plaintiff has failed to sustain its burden of producing sufficient evidence to support a finding of summary disposition in its favor on the issue of defendant's interference with contract performance. Plaintiff has relied on the allegations contained in its briefs, which are unsupported by evidence in the record. Thus, plaintiff's Cross-Motion for Summary Judgment is denied.

 The court also finds that the plaintiff has failed to sustain its burden of showing that a genuine issue of material fact exists to preclude the granting of defendant's Motion for Summary Judgment, or that the defendant materially breached its contract with plaintiff. A reading of the final modification agreement, signed by the parties on or about September 12, 1984, convinces this court that the date contracted for substantial completion of the specified roads was April 3, 1985. It is uncontested that plaintiff did not satisfy performance by that date, nor within the period allowed to cure a breach under the terms of the contract, as amended. The Forest Service did not unjustifiably hinder or delay plaintiff's performance and the Forest Service was justified when it terminated plaintiff's contract for failure to render performance.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is, hereby, GRANTED, and Plaintiff's Cross-Motion for Summary Judgment is, hereby, DENIED. The Clerk of the Court is ordered to enter judgment in accordance with this Opinion.

IT IS SO ORDERED.

nation to terminate the plaintiff for default. Indeed, the record clearly indicates that the original contract and all modifications, as well as the letter of termination, dated April 4, 1985, and various other documents, all reference the "substantial completion" standard, which is less onerous than a "completion" standard.