Marjorie NICHOLSON

v.

The **UNITED STATES.**

No. 90–592C.

United States Court of Federal Claims.

June 29, 1993.

Reissued Sept. 9, 1993.*

---

* This opinion was originally issued without publication. The defendant moved for reissuance as a published opinion without objection from the plaintiff. For good cause shown, the motion is granted.

Donald W. Stewart, Anniston, AL, for plaintiff.

Gerald M. Alexander, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

YOCK, Judge.

This contract case comes before this Court on defendant's motion to dismiss and for summary judgment. The plaintiff's complaint is aimed primarily at obtaining declaratory and injunctive relief against the Government (SBA) to keep it from foreclosing on real property pledged as collateral on a SBA contract that was in default. Secondarily, the plaintiff's complaint requests damages against a private third party for alleged breach of contract and against the Government for alleged breach of contract. Since the Government is correct that this Court has no general equitable jurisdiction to grant injunctive or declaratory judgments, such as the plaintiff is seeking here, the Court hereby grants the defendant's motion to dismiss as to the plaintiff's equitable requests. The Court also grants the defendant's motion to dismiss as to the plaintiff's demands for damages for breach of contract against a private third party, since this Court has no jurisdiction to grant money judgments against private third parties. Finally, this Court also grants the defendant's motion for summary judgment on the plaintiff's contract breach claims against the Government because there are no material facts in dispute, and the Government is entitled to judgment as a matter of law.

### Facts

This case arises over the disputed terms of two instruments executed by the parties to this suit and the alleged breach of the second instrument by the Government. The first instrument resulted from a debt obligation obtained to complete construction of a commercial enterprise, while the second instrument ensued from the sale of the premises.

In the late 1960's and early 1970's, the plaintiff purchased two adjacent parcels of land in Cave Springs, Georgia. The plain-

tiff intended to erect a dwelling house on one parcel and later decided to build a motel on the other. After initiating construction of the motel, the plaintiff had prepared the first level for occupancy, but required additional financing to pay building suppliers and to complete construction of the remaining parts of the facility. Consequently, the plaintiff applied for a loan from the Small Business Administration (SBA), and on April 12, 1976, obtained a loan from the Commercial National Bank of Cedartown, Georgia, which was guaranteed by the SBA. On June 11, 1979, the Commercial National Bank assigned the debt at issue, with all rights, title, and interest thereto, to the SBA.

Under the terms of the loan, and in order to secure the debt, the plaintiff executed a "Deed to Secure the Debt" which listed the subject property as well as three additional lots as collateral. Despite the language of the instrument, however, the plaintiff denies placing her home and lot, a service station and lot, and several empty lots in Rice Springs, Georgia, as collateral for the loan. Specifically, the plaintiff declares: "On the deed to secure the debt, the SBA added the service station and lots at Rice Springs, Georgia, after I endorsed the deed to secure the debt, and prior to it's [sic] being recorded. I did not intend to include that property as security for the mortgage." Complaint (Affidavit of Marjorie L. Nicholson), Exhibit E, at 1–2. However, the Deed to Secure Debt specifically describes the three disputed parcels on the first and fifth pages of the debt instrument. *Id.* at 1, 5. Moreover, the deed contains the plaintiff's signature and the attestation of a notary. *Id.* at 3. Furthermore, the plaintiff does not deny executing the deed. Finally, one day after executing the debt instrument, on April 13, 1976, the document was duly filed and recorded in Book 675 of Deeds, on pages 158 through 162, in the Office of the Clerk of the Superior Court of Floyd County, Georgia.

The plaintiff's next dispute with the SBA involves the sale of the motel and lot. In 1979, a flood damaged portions of the lower level of the motel, and the plaintiff experienced financial difficulties in meeting the loan payments. As a result, after repairing the damage, the plaintiff listed the motel for sale. In June of 1982, the plaintiff entered into a sales contract, but after a fire caused extensive damage to the facility, the deal fell through. In December of 1983, the plaintiff entered into another sales contract but legal complications of the buyer again hindered the sale. Finally, in June of 1984, Southeastern Motel Investors, Inc. (SMI) agreed to purchase the motel.

In order to ascertain the rights of all parties regarding the sale of the motel, the plaintiff, SMI, and the SBA entered into a written agreement. This "Assumption Agreement" constitutes the second instrument at issue in the instant dispute. *See* Complaint (Assumption Agreement), Exhibit C. Executed on June 25, 1984, the agreement recited the following: the assumption by SMI of the obligations of the plaintiff (¶ 1), the right of enforceability by the SBA against SMI, and a certification of no claims against the plaintiff by SMI (¶ 2), a certification of no claims against the Government by the plaintiff (¶ 3), the no modification provision (¶ 4), the discretionary right of the SBA provision (¶ 5), the conformity clause as to the original debt instrument (¶ 6), the tax liability clause (¶ 7), the provision of insurance clause (¶ 8), the continuance of original collateral clause (¶ 9), the terms of sale clause, and the improvements guarantee (¶ 10), the partial and/or full enforcement clause (¶ 11), and the statement of applicable law clause (¶ 12). With the Assumption Agreement, as with the Deed to Secure the Debt, the plaintiff denies assent to certain provisions of the instrument. However, as with the original debt instrument, the Assumption Agreement contains the plaintiff's signature and the attestation of a notary plus the signatures of all the other parties to the agreement. *Id.* ¶ 12. Furthermore, the plaintiff does not deny executing the agreement.

Nevertheless, the plaintiff suggests three areas of nonconformity whereby, according to the plaintiff, the SBA either

affected a fraud or breached the contract under the Assumption Agreement. First, the plaintiff claims that the agreement contained an "implicit release" of all properties owned by the plaintiff, including any collateral recited in the original debt instrument, except for the property subject to the sale. As the SBA later foreclosed on all properties listed in the original debt instrument, the plaintiff infers fraud by the SBA under the terms of the Assumption Agreement. Second, while the plaintiff correctly states that the Assumption Agreement required SMI to make monthly payments, to pay property taxes, to maintain insurance, and to make $32,000 in improvements to the property, the plaintiff further avers that these provisions constituted "mandatory obligations" of enforcement on the part of the SBA. The plaintiff asserts that the SBA had a duty to enforce the contractual obligations agreed to in the contract by SMI, and because the SBA failed to enforce these contractual obligations on SMI's part, the plaintiff claims that the SBA breached the contract. The plaintiff also alleges that, by abuse and neglect, SMI failed to maintain the motel, and resultingly, the facility fell into disrepair. Pursuant to the supposed failure by the SBA to enforce the SMI contractual obligation, the plaintiff likewise alleges breach of contract. Third, the plaintiff not only imputes "mandatory obligations" of enforcement to the SBA, but also claims that she may hold the SBA liable for any failure to exercise the alleged enforcement "obligations." Thus, the plaintiff asserts an independent right of enforceability against the SBA under the terms of the Assumption Agreement, and pursuant to such right, herein sues for breach of contract by the SBA.

Subsequent to the above mentioned difficulties experienced by the new owner, as well as the failure to make timely payments, the SBA attempted to enforce the terms of the loan against SMI from May of 1985, to February of 1986. Without success, the SBA eventually accelerated the debt, thereby demanding payment of the entire outstanding amount against SMI and initiating foreclosure proceedings against the plaintiff under the original debt instru-

ment. However, when the plaintiff filed a petition in bankruptcy on June 30, 1986, the Chapter 11 suit stayed the foreclosure. Subsequently, during the pendency of these bankruptcy proceedings, without the knowledge or consent of the SBA, SMI conveyed the subject property to Westco Investment Corporation (Westco) in May of 1988, and Westco sequentially conveyed the property to the Investment Recovery Group, Inc. (IRG) in July of 1988. Nevertheless, in 1990, the SBA again attempted to proceed with foreclosure and scheduled a foreclosure sale for February 6, 1990, of the properties listed as collateral in the Deed to Secure the Debt and retained pursuant to the Assumption Agreement. When the plaintiff denied receipt of notice as required by Georgia law, the SBA delayed the sale in order to provide personal service of the plaintiff. When the SBA again planned a foreclosure sale for March 6, 1990, of the subject properties, the plaintiff filed another petition in bankruptcy on the very day of the sale which, again, stayed the foreclosure.

On July 2, 1990, the Government filed a motion to lift the stay on the foreclosure sale in the United States Bankruptcy Court for the Northern District of Georgia. Subsequent thereto, the plaintiff initiated the present action in this Court. Further, despite the fact that, on July 3, 1990, the bankruptcy court granted the Government's motion and that the subject properties were subsequently sold to the highest bidder at a foreclosure sale, the plaintiff here seeks damages for fraud and breach of contract. On July 9, 1992, the defendant filed the instant motion to dismiss certain portions of the complaint for lack of jurisdiction, and for summary judgment of those portions of the complaint over which the Court has jurisdiction.

### Discussion

As earlier indicated, the plaintiff in this action has sued in this Court for declaratory and injunctive relief, for breach of contract against a private third-party defendant (SMI), and for breach of contract against the Government.

■ This Court, however, *does not* have general equitable jurisdiction in matters of contracts. The jurisdiction of the United States Court of Federal Claims encompasses only money claims against the United States. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Overall Roofing & Constr., Inc. v. United States,* 929 F.2d 687, 689 (Fed.Cir.1991), *superseded by statute as stated in, L. Addison & Assocs., Inc. v. United States,* 27 Fed.Cl. 181 (1992); *Miller v. United States Postal Service,* 231 Ct.Cl. 804, 809, 1982 WL 25236 (1982); *Boehm v. United States,* 22 Cl.Ct. 511, 518 (1991). *But see Placeway Constr. Corp. v. United States,* 920 F.2d 903, 906 (Fed.Cir. 1990) (recognizing statutory authority for the granting of injunctions in bid protests before award); *L. Addison & Assocs., Inc. v. United States,* 27 Fed.Cl. 181, 182 n. 3 (1992) (reciting the recent statutory authorization for declaratory judgment authority, pursuant to the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), over nonmonetary claims arising under the Contract Disputes Act). Clearly this is not a Contract Disputes Act matter. This Court, therefore, grants the defendant's motion to dismiss the plaintiff's equitable claims against the SBA for lack of jurisdiction.

■ Likewise, it is indisputably clear that this Court *lacks jurisdiction* over suits against private third-party defendants. The jurisdiction of the Court of Federal Claims extends only to claims against the United States. *See United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941) ("[I]t has been uniformly held, upon a review of the statutes creating the court and defining its authority, that its jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court, * * * .") (citations omitted); *National City Bank v. United States,* 143 Ct.Cl. 154, 164, 163

F.Supp. 846, 852 (1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained."); *Kennedy v. United States,* 19 Cl.Ct. 69, 75 (1989) ("If the relief sought is other than a money judgment against the United States, the suit must be dismissed; and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the Court."). This Court, therefore, grants the defendant's motion to dismiss the plaintiff's damages claim against SMI (a private third party) for lack of jurisdiction.

Finally, it is also clear that this Court *does* have jurisdiction over matters involving contacts where the Government is a party. Since the plaintiff is alleging a breach of a Government contract by the Government and demands a money judgment, this Court does have jurisdiction to review the merits of the plaintiff's claim. Therefore this Court will consider and decide the *defendant's motion for summary* judgment as to the plaintiff's breach of contract allegations.

Summary judgment is appropriate only when a court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The Rules of the United States Court of Federal Claims (RCFC) parallel Rule 56(c) of the Federal Rules and require summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." RCFC 56(c). As RCFC 56(c) closely resembles Rule 56(c) of the Federal Rules, findings pursuant to Rule 56(c) are persuasive in interpreting RCFC 56(c). *Imperial Van Lines Int'l Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir. 1987); *Alaska American Lumber Co. v. United States,* 25 Cl.Ct. 518, 525 n. 5 (1992); *Lichtefeld–Massaro, Inc. v. United*

*States,* 17 Cl.Ct. 67, 70 (1989). Thus, as "[r]ule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), summary judgement is appropriate here if the Government carries the burden of showing that (1) there is no genuine issue of material fact and that (2) it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States,* 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991).

When making a summary judgment determination, a court must consider the existence of a genuine issue as to any material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. In *Webster University v. United States,* 20 Cl.Ct. 429 (1990), the Claims Court defined this consideration:

> An issue is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant, *see, e.g., Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1662 (Fed.Cir.1987), while the materiality of the fact is determined by reference to applicable legal standards. *Id.,* 833 F.2d at 1567.

*Id.* at 432 (emphasis omitted). "[T]he dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While the movant bears the initial burden of showing the absence of all genuine issues of material fact, *Avia Group Int'l. Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1561 (Fed.Cir. 1988), "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the [ ] court—that there is

an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

Once the movant discharges this burden, the burden falls on the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), to demonstrate "specific facts showing that there is a genuine issue for trial." RCFC 56(f). Such evidence must be viewed in a light most favorable to the nonmovant. *Adickes,* 398 U.S. at 147, 90 S.Ct. at 1602; *Whittaker Corp. v. UNR Industries, Inc.,* 911 F.2d 709, 713 (Fed.Cir.1990); *Circle K Corp. v. United States,* 23 Cl.Ct. 665, 669 (1991). Nevertheless, "[t]o create a genuine issue of fact, the nonmovant must do more than present *some* evidence on an issue it asserts is disputed." *Avia Group,* 853 F.2d at 1560. "If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). "[T]he mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). "The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusive allegations or denials' as a vehicle for obtaining a trial. Rather, he must bring to the [ ] court's attention some affirmative indication that his version of relevant events is not fanciful." *Id.* (citing *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). "Thus, a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact." *Avia Group,* 853 F.2d at 1560.

In this case, the movant (the defendant) asserts that plaintiff has proffered no evidence in support of plaintiff's position and, thus, demonstrates no genuine factual dispute between the parties. Indeed, the plaintiff presents little more than her own

allegations regarding alleged improprieties involving the collateral provisions of a debt instrument and sales agreement, and the supposed enforceability requirements of the SBA over another party. "[m]ere allegations by declaration or otherwise do not raise issues of fact needed to defeat a motion for summary judgment." *Litton Indus. Prods. Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 164 (Fed.Cir.1985). In a district court holding, with similar facts as here, a nonmovant failed to raise a genuine issue of material fact, and the court ruled:

> [The nonmovant has] offered no documentary evidence, no testimony from non-party witnesses, no affidavits—nothing beyond their own conclusive allegations—to support their story. "When, as here, the movant for summary judgment introduces evidence demonstrating that his adversary's claim is baseless, the opposing party cannot rely on mere conclusive allegations to defeat that motion. Rather, he must offer specific facts showing that there is a genuine issue for trial." What is more, [the nonmovant's] "claim is effectively repelled by documentary evidence including [the nonmovant's] own writings."

*Happy Dack Trading Co. v. Agro–Industries, Inc.*, 602 F.Supp. 986, 993 n. 7 (S.D.N.Y.1984) (citations omitted).

 Based on the unsupported allegations of the plaintiff, this Court concludes that no factual dispute exists in the present litigation. *See Carpenter v. United States*, 4 Cl.Ct. 705, 719 (1984) ("To avoid summary judgment against him, plaintiff cannot rest on the mere assertion that disputed facts exist which must be resolved at trial, rather it is plaintiff's duty to specify some evidence which will prevent the trial from becoming a useless formality."). In cases such as this, summary judgment serves the role of unmasking frivolous claims, ending meritless litigation, and unburdening limited judicial resources. *Berman v. Royal Knitting Mills, Inc.*, 86 F.R.D. 124, 126 (S.D.N.Y.1980); *see D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146–47 (Fed.Cir.1983) ("Summary judgment is an important means of conserving judicial resources. It must, however, be carefully employed in appropriate cases for an improvident grant may deny a party a chance to prove a worthy case and an improvident denial may force on a party and the court an unnecessary trial."). As the preceding factual review illustrates, and as the foregoing legal analysis demonstrates, the plaintiff has failed to present any evidence to show a worthy case for trial.

When making a summary judgment determination, however, a court must also consider whether the movant is entitled to a judgment as a matter of law. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552. Resultingly, this Court considers the plaintiff's allegations in turn.[1]

---

1. As set forth in the factual portion of this Opinion, the plaintiff asserts lack of assent to the terms of the two instruments at issue and breach of contract (as well as fraud). Significantly, this Court deduces these assertions strictly from the complaint and not from the plaintiff's Response to Defendant's Motion for Summary Judgment. For in this response, consisting of only two pages, the plaintiff merely reasserts the factual contentions stated in the complaint as the primary ground for denial of summary judgment which, oddly, relies solely on the allegations of Ms. Nicholson which, in turn, appears in the form of a written affidavit as appended both to the complaint and response. The seven page complaint, moreover, not only makes mere regurgitation of the statements contained in the affidavit but cites neither legal theory nor case law on which to rely as grounds for denial of summary judgment. Therefore, based on the plaintiff's legally deficient complaint and legally and factually imperfect response, this Court has strained to construe the essence of the plaintiff's arguments as presented herein.

In addition to the foregoing, in the response the plaintiff cites to an inter-agency memorandum of the SBA, wherein the agency refers the loan account of the debt at issue in this litigation for investigation by the Inspector General's Office, as a second and alternative ground for denial of summary judgement. Memorandum from Liz Stoe, Portfolio Management Division, SBA to Raymond L. Gibeau, Chief, Portfolio Management Division, SBA (June 29, 1990) ("The above referenced loan account should be referred to the Inspector General's Office * * *."). Again, however, the plaintiff fails to provide any factual or legal foundation for the relevancy of this memorandum and why the document should dissuade this Court from

*Assent to Terms of Debt and Sales Instruments*

In this dispute, the plaintiff initially attacks the enforceability of the legal instruments at issue, including the original debt instrument (the Deed to Secure the Debt) and the sales agreement (the Assumption Agreement). Specifically, the plaintiff avers that she never acceded to the placement of certain items of real property as collateral on the debt instrument, and also, that any such expression of collateral ended upon execution of the subsequent sales agreement. Although the plaintiff fails to state the issue as such, the plaintiff essentially claims fraud. The instruments at issue, however, contradict these assertions.

Despite the plaintiff's contentions to the contrary, the Deed to Secure the Debt lists three tracts of real property as collateral for the subject loan. The first tract includes the motel and lot and the plaintiff's home and lot; the second tract includes the service station and lot; and the third tract includes several empty lots in Rice Springs, Georgia. The debt instrument recites:

*TRACT A.* All that tract or parcel of land situated, lying and being in the City of Cave Spring, Floyd County, Georgia, described as beginning at a point on the North side of a street, being a continuation easterly of Alabama Street, said street leading to the Georgia School for the Deaf and formerly known as Asylum Street, and running thence easterly, along the north side of said street, 170 feet, more or less, to the property of the Georgia School for the Deaf * * *.

*TRACT B.* All that tract or parcel of land, lying situated and being in the City of Cave Spring, Floyd County, Georgia, fronting westerly on Rome Street, in the said City of Cave Spring, and being more particularly described as follows:

Beginning at the point where the easterly right of way line of said Rome Street intersects the northerly right of way line of Alabama Street * * *.

*TRACT C.* All that tract or parcel of land situated, lying and being in Land Lot 157 in the 4th District and 4th Section of Floyd County, Georgia, and known as being lots 233, 234, 235 and 236 of the Rice Springs Estates Subdivision, * * *.

Complaint (Deed to Secure the Debt), Exhibit A, at 1, 5. Thus, in contrast to the allegations of the plaintiff, the instrument contains explicit reference to the disputed items of real property. Furthermore, despite plaintiff's contentions to the contrary, the Assumption Agreement provides for the retention of all collateral from the original debt instrument (*i.e.*, the Deed to Secure the Debt). The sales agreement expressly states: "The parties agree that all collateral securing the referenced note shall be charged with the indebtedness, as modified and assumed herein, and nothing herein shall release, or be construed to release the said collateral until payment in full at maturity as stated in paragraph 10." Complaint, Exhibit C (Assumption Agreement) ¶ 9, at 4.

▮ As the above quotations demonstrate, the instruments in question contrast directly with the contentions of the plaintiff. In addition, the plaintiff's signature appears on both instruments, as does the attestation of a notary. Therefore, as " '[a] person's signature on a written instrument normally indicates assent to the terms of that document,' " *Alaska American Lumber Co. v. United States*, 25 Cl.Ct. 518, 529 (1992) (quoting *Carpenter v. United States*, 4 Cl.Ct. 705, 714 (1984)), the legal issue here implicates not fraud, in the complete absence of such evidence, but the plaintiff's duty (or failure thereof) to read the contract before affixing her signature in agreement of the terms recited therein. *See generally* JOHN D. CALAMARI AND JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 9–42, at 410 (3d ed. 1987) (hereinafter THE LAW OF CONTRACTS) ("[O]ne having the capacity to understand a written document who reads it, or, without reading it or

granting summary judgment. As such, this Court deems the subject memorandum as inapposite to the issues for disposition at bar.

having it read to him, signs it, is bound by his signature.") (quoting *Rossi v. Douglas*, 203 Md. 190, 192, 100 A.2d 3, 7 (1953)).

■■■■ As the United States Supreme Court recognized in *Upton v. Tribilcock*, 91 U.S. 45, 1 Otto 45, 23 L.Ed. 203 (1875), a person may not agree to a contractual obligation and later seek avoidance thereof through assertions of ignorance over the contract terms. The Court held:

That the defendant did not read the charter and by-laws, if such were the fact, was his own fault. It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.

*Id.* at 50. The United States Court of Claims has also applied this ruling. *See Guyler v. United States*, 161 Ct.Cl. 159, 168–69, 314 F.2d 506, 511 (1963), Davis, J., concurring (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50, 1 Otto 45, 23 L.Ed. 203 (1875)); *see also Vogt Bros. Mfg. Co. v. United States*, 160 Ct.Cl. 687, 717–18, 1963 WL 8571 (1963) ("The plaintiff evidently had not read, or at least had not paid any particular attention to, the provision * * * [and] in the absence of evidence of fraud, imposition, or special circumstances excusing the plaintiff's failure to read or pay attention to the contract provision * * * the plaintiff was fully bound by such provision despite the plaintiff's lack of awareness of it."); *International Contracting Co. v. United States*, 47 Ct.Cl. 158, 162, 1911 WL 1341 (1911) ("And, while contracts requiring construction should be construed most strongly against the party preparing the same, the other party is not thereby relieved from performance on his part, though he may not have read the contract."). The United States Claims Court has, likewise, consistently applied the rule of *Upton v. Tribilcock*. As recited in *Alas-

*ka American*, for example, the Claims Court found:

Even failure to read a document before signing it does not enable one to ignore the obligations imposed by that document. * * * Furthermore, absent a showing of fraud or mental incompetence, one who reads a document, or signs it even without reading it, is bound by its terms. *Coleman v. Prudential Bache Secur., Inc.*, 802 F.2d 1350, 1352 (11th Cir.1986) (citing *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir.1985); *Donovan v. Mercer*, 747 F.2d 304, 308 n. 4 (5th Cir.1984)).

*Alaska American*, 25 Cl.Ct. at 529; *e.g.*, *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 602, 638 P.2d 210, 216 (1981); *Laird v. Laird*, 597 P.2d 463, 467 (Wyo. 1979); *Dixon v. Manier*, 545 S.W.2d 948, 949 (Tenn.Ct.App.1976); *Burchett v. Allied Concord Fin. Corp.*, 74 N.M. 575, 582, 396 P.2d 186, 191 (1964). Thus, this Court recognizes that, absent coercion, duress, undue influence, mental incompetence, or fraud, a party becomes bound by the obligations contained within a legally executed document, regardless of whether the party reads the document before execution.

■■■ In the instant case, the plaintiff specifies her experience "in the construction business" and, relying thereon, purchased the property at issue with the intention of constructing a motel. In light of such experience, the plaintiff must have also encountered legal and financial documents relating to this type of business. As such, she should have known better than to sign a debt instrument without reviewing the provisions thereof. Furthermore, "[i]f plaintiff felt that the language in the [instrument] was too technical for [her] to understand, [s]he should have consulted with an attorney or other expert conversant in the field * * *." *Carpenter v. United States*, 4 Cl.Ct. 705, 720 (1984). Indeed, "[o]rdinarily one having need of legal advice will retain counsel and not take it from the other side of the negotiating table. Purchase and sale of real estate is a kind of transaction where retention of counsel is ordinary and usual." *Mills v.*

*United States,* 187 Ct.Cl. 696, 700, 410 F.2d 1255, 1258 (1969). Therefore, as the plaintiff demonstrates no evidence to this Court of coercion, duress, undue influence, mental incompetence, or fraud, this Court has no option but to hold the plaintiff to the terms of the contract which she duly executed before a witness and notary.

▇ In addition to the general reference to fraudulent conduct by claims of nonassent to the contractual provisions, the plaintiff makes an additional, specific allegation of fraud by the SBA. Particularly, the plaintiff avers that the SBA serendipitously added the disputed collateral provisions to the debt instrument after she had signed the document. However, the Deed to Secure the Debt specifically references the three disputed tracts of real property: the instrument recites two of the three tracts on the very first page and refers the reader to the fifth page for the additional tract. Without "some evidence" of fraud, other than the plaintiff's mere allegations thereof, this Court construes the instrument as executed. *See Seatrain Lines, Inc. v. United States,* 99 Ct.Cl. 272, 316, 1943 WL 4194 (1943) ("We cannot accept a mere charge of fraud in a brief unsupported by pleading or evidence, as a basis sufficient to justify us in giving it factual notice in our special findings."); *see cf. Irolla v. United States,* 182 Ct.Cl. 775, 785, 390 F.2d 951, 957 (1968) ("If there is any evidence of fraud, it is a mere scintilla, and wholly insufficient to impose the fraud penalty on this taxpayer."). Even were there a scintilla of evidence of fraud, of which there is not, rescission of the instant agreement would nevertheless remain unavailable because of the delay in assertion. *See Atlantic Dredging Co. v. United States,* 53 Ct. Cl. 490, 513, 1918 WL 1031 (1918) ("[W]e also understand the rule to be that if he become [sic] advised of the fraud perpetrated upon him in season to recede from his engagement and yet, with knowledge of the falsity of the representations which had induced the contract, elects to perform, and clearly manifests his intention to abide by the contract, he condones the fraud and is without remedy."), *aff'd,* 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735 (1920) (quoting

*Kingman v. Stoddard,* 85 F. 740, 745 (7th Cir.1898)). In this case, the plaintiff executed the Deed to Secure the Debt in 1976, but waited fourteen years before protesting the collateral provisions. In such event, significant delay in seeking rescission waives any right thereto. *See Adler Constr. Co. v. United States,* 191 Ct.Cl. 607, 615, 423 F.2d 1362, 1366 (1970) (denying rescission after completion of contract performance), *cert. denied,* 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971); *Garrett v. United States,* 15 Cl.Ct. 204, 208 (1988) (denying rescission after four years of performance and default). Thus, even if there were fraud here, the plaintiff sat on her rights too long to now claim such a remedy. *See Chernick v. United States,* 178 Ct.Cl. 498, 506, 372 F.2d 492, 496 (1967) (requiring prompt rescission).

Therefore, as explained above, this Court finds the terms of the two instruments in question enforceable against the plaintiff, despite her proffered ignorance of the provisions thereof. Thus, because the Deed to Secure the Debt recites not only the motel and lot but also plaintiff's home and lot, plaintiff's service station and lot, and plaintiff's empty lots in Rice Springs, Georgia, as collateral, and because the Assumption Agreement explicitly incorporates all collateral securing the original debt in paragraph 9· of the agreement, this Court finds no fraud by the SBA in enforcement of the two instruments at issue against the plaintiff and the subsequent foreclosure of the collateral recited therein.

*Breach of Contract*

In addition to attacking the terms of the Deed to Secure the Debt and of the Assumption Agreement, the plaintiff also recites two grounds for breach of contract by the SBA. Yet, as both grounds depend upon an alleged obligation on the part of the SBA, as enforceable by the plaintiff, to take action against SMI in the event of a breach of the Assumption Agreement, the primary issue here involves whether the Assumption Agreement indeed imposed an obligation upon the SBA to take action against SMI in the event of breach, and

secondarily, whether the agreement provided for the enforcement of any such obligation by the plaintiff as against the SBA.

▮▮▮▮ In addressing both of these questions, this Court applies the plain meaning rule, as far as possible, to the terms of the instruments at issue. "The Plain Meaning Rule states that if a writing, or the term in question, appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." THE LAW OF CONTRACTS § 3–10, at 166–67. Thus, in the absence of contractual ambiguity, the plain meaning rule applies in the following circumstance:

> Where the language of an instrument is neither uncertain nor ambiguous, it is to be expounded according to its apparent import; and is not to be warped from the ordinary meaning of its terms, in order to harmonize it with uncertain suppositions, in regard either to the probable intention of the parties contracting, or to the probable changes which they would be made in their contract, had they foreseen certain contingencies. Wherever the words are clear and definite, they must be understood according to their grammatical construction and in their ordinary meaning.

WILLIAM W. STORY, A TREATISE ON THE LAW OF CONTRACTS NOT UNDER SEAL § 639, at 562 (2d ed. 1847). Corbin describes the plain meaning rule as follows:

> If, after a careful consideration of the words of a contract, in the light of all the relevant circumstances, and of all the tentative rules of interpretation based upon the experience of courts and linguists, a plain and definite meaning is achieved by the court, a meaning actually given by one party as the other party had reason to know, it will not disregard this plain and definite meaning and substitute another that is less convincing.

3 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 535, at 19–20 (1960) (hereinafter CORBIN ON CONTRACTS). Likewise, Williston recites the plain meaning rule in the following fashion:

> "The language of a contract must be understood to mean what it clearly expresses. A court may not depart from the plain meaning of a contract where it is free from ambiguity. In construing the terms of a contract, where the terms are plain and unambiguous, it is the duty of the court to construe it as it stands, even though the parties may have placed a different construction on it. It seems to us that when parties to a contract adopt a provision which does not contravene a principle of public policy, and which contains no element of ambiguity, the court has no right, by a process of interpretation to relieve one of them from any disadvantageous terms which he has actually made."

4 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 609, at 403 (3d ed. 1961) [hereinafter WILLISTON ON CONTRACTS] (quoting *Cernohorsky v. Northern Liquid Gas Co.*, 268 Wis. 586, 592–93, 68 N.W.2d 429, 433 (1955)).

▮▮▮▮ While this Court acknowledges that the plain meaning rule has withstood some criticism, *see* GROVER C. GRISMORE, PRINCIPLES OF THE LAW OF CONTRACTS § 91, at 152 (1947) ("By applying language literally [the plain meaning rule] ignored the difficulty growing out of the fact that contingencies frequently arise which were not thought of, and that general language is often used in a promise without any realization of all its implications."), the courts have repeatedly applied this rule, primarily in statutory construction, *Thompson/Center Arms Co. v. United States*, 924 F.2d 1041, 1044–45 (Fed.Cir.1991), *aff'd*, —— U.S. ——, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992); *Whelan v. United States*, 208 Ct. Cl. 688, 693, 529 F.2d 1000, 1002–03 (1976); *Shimota v. United States*, 21 Cl.Ct. 510, 523 (1990), *aff'd*, 943 F.2d 1312 (Fed.Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992), but also in contract interpretation, *Tester Corp. v. United States*, 1 Cl.Ct. 370, 373 (1982) ("Under recognized rules of contract interpretation, 'words are to be given their plain and ordinary meanings' * * * pursuant to the plain meaning rule * * *.") (citations

omitted). Generally, application of the rule arises in the following scenario:

> If the court finds that only one reasonable interpretation of the contract provision exists, the court's inquiry ends and the single reasonable interpretation will apply. *See Cherry Hill Sand and Gravel Co. v. United States*, 8 Cl.Ct. 757, 767 (1985). However, if the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. *See Bennett v. United States*, 178 Ct.Cl. 61, 64, 371 F.2d 859, 861 (1967); *Opalack v. United States*, 5 Cl.Ct. 349, 359 (1984). But, contract terms are not ambiguous simply because the parties disagree as to the contract's meaning. *Cherry Hill Sand and Gravel Co. v. United States*, 8 Cl.Ct. 757, 764 (1985). Indeed, it is inappropriate to strain the language of a contract to create an ambiguity. *Opalack v. United States*, 5 Cl.Ct. 349, 359 (1984).

*Seaboard Lumber Co. v. United States*, 19 Cl.Ct. 310, 314–15 (1990). Thus, if no ambiguity exists, the "plain and ordinary meaning" of the contract applies. *See George Hyman Constr. Co. v. United States*, 832 F.2d 574, 579 (Fed.Cir.1987) ("It is well established that where, as here, the provisions of a contract are phrased in clear and unambiguous language, 'the words of those provisions must be given their plain and ordinary meaning by the court in defining the rights and obligations of the parties....' ") (quoting *Elden v. United States*, 223 Ct.Cl. 239, 252, 617 F.2d 254, 260–261 (1980)). Thus, albeit perhaps not by name, the courts have repeatedly affirmed the interpretation of unambiguous contracts by their plain and ordinary meaning (*i.e.*, the plain meaning rule). *See, e.g., Triax–Pacific v. Stone*, 958 F.2d 351, 354 (Fed.Cir.1992); *San Carlos Irrig. & Drainage Dist. v. United States*, 877 F.2d 957, 960 (Fed.Cir.1989); *Baggett Transp. Co. v. United States*, 23 Cl.Ct. 263, 273–74 (1991), *aff'd*, 969 F.2d 1028 (Fed.Cir.1992). In the present dispute, as the plaintiff demonstrates no ambiguity in the instruments at issue, and as this Court finds no such ambiguity, the plain meaning rule applies.

■ As recited above, the issue at bar involves whether the Assumption Agreement imposed an obligation upon the SBA to take action against SMI in the event of a breach, and more specifically, whether the agreement provided for the enforcement of any such obligation by the plaintiff as against the SBA. The plaintiff, of course, offers the answer to these questions in the affirmative, but as with all of the plaintiff's claims, she provides this Court with nothing more than baseless, and indeed refutable, allegations. For example, as a first ground to demonstrate breach by the SBA, the plaintiff avers that the Assumption Agreement "required" that the SBA ensure that SMI make monthly payments, pay property taxes, maintain insurance, and affect $32,000 in improvements to the property at issue. Although the agreement veritably recites these obligations on the part of SMI, the agreement specifically repudiates any enforceability "requirement" by the SBA under the discretionary right provision. This provision of the sales agreement states:

> Each and every right, remedy, power and privilege granted to the SBA hereunder, or allowed to the SBA by law or equity shall be cumulative and may be exercised from time to time hereinafter by the SBA in its sole discretion in accordance with these presents. No failure on the part of the SBA to exercise, and no delay in exercising, any right hereunder or under any of the aforesaid instruments shall operate as a waiver thereof, nor shall any single or partial exercise by the SBA of any of the aforesaid rights preclude any other future exercise thereof or the exercise of any other right of the SBA.

Complaint (Assumption Agreement), Exhibit E, ¶ 5. Thus, pursuant to the plain meaning rule, this Court finds that the language could not be more clear that *no* obligation existed whereby the SBA maintained an obligation to enforce any term of the agreement. As with the plaintiff's first ground of breach, this ruling applies equally to the plaintiff's second ground, or that the SBA breached the agreement by failure to take corrective action against

SMI for the alleged abuse and neglect of the motel premises. Again, under the plain meaning rule, the SBA possessed complete discretion in enforcing any term of the Assumption Agreement. As a result, both grounds for breach claimed by the plaintiff fail. *See L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1364 (Fed.Cir.1982) ("A contract has, strictly speaking, nothing to do with the personal, or individual intent, of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent.") (quoting *Hotchkiss v. National City Bank of New York*, 200 F. 287, 293 (S.D.N.Y.1911).

The plaintiff, however, also alleges that she maintained a right of enforcement under the terms of the Assumption Agreement in the event that the SBA failed to comply with the terms thereof—particularly, a right of enforcement against the SBA. Again, however, the plaintiff provides this Court with nothing more than baseless allegations. For, within the four corners of the agreement, this Court finds no right of enforcement by the plaintiff against the SBA. *See* JOHN CIBINIC, JR. & RALPH C. NASH, JR., ADMINISTRATION OF GOVERNMENT CONTRACTS 102–03 (2d ed. 1986) (hereinafter CIBINIC & NASH, ADMINISTRATION) ("Courts and boards follow no predetermined, well-defined analytical framework when giving a contract meaning through the interpretative process. * * * If a "clear" interpretation is found, analysis ends; otherwise a circuitous evaluation of the other factors may ensue."). In ruling on this issue, therefore, this Court finds that it must turn to the fundamentals of basic contract law. In this case, the plaintiff seeks to inject her opinion as to the terms of the instant agreement, including terms which provide no clear answer on the right of enforcement. Furthermore, because this question implicates the intent of the parties, the plaintiff infers that she may proffer parol evidence [2] to support her position relating to the agreement. As such, this Court turns to the admissibility of parol evidence under the "parol evidence rule." *See* COR-BIN ON CONTRACTS § 573, at 357 (applying the parole evidence rule as: "When two parties have made a contract and have expressed it in writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.").

 Generally, "[t]he parol evidence rule has been stated in many ways but the basic notion is that a writing intended by the parties to be a final embodiment of their agreement may not be contradicted by certain kinds of evidence." THE LAW OF CONTRACTS § 3–2, at 135–36. Application of the parol evidence rule depends substantially on whether an instrument constitutes a "total integration." *See id.* § 3–2, at 136 ("A writing that is final is at least a partial integration. If the writing is final and also complete, it is a total integration and may not only not be contradicted by the type of evidence in question but may not even be supplemented by consistent (non-contradictory) additional terms.") (footnote omitted). Integration occurs where the parties regard a writing as the final embodiment of their agreement. *Id.* § 3–3, at 143. When a writing constitutes a "total integration," however, it implicates as many as six different rules of contract construction. *Id.* § 3–4, at 145–53 (describing the "four corners" rule, the "collateral contract" concept, the Williston rule, the Corbin rule, the UCC rule, and the Restatement, Second rule). As no collateral agreements exist under the present facts (thus, distinguishing the collateral contract concept), and as the majority of cases reject a subjective approach to contract construction (thus, contrasting the Corbin Rule, the UCC Rule, and the Restatement, Second, of Contracts Rule), this Court adopts and applies the Williston Rule in construing the parol evidence rule to the facts of the dispute at

---

**2.** Distinguishable from the "parole evidence rule," "parole evidence" encompasses any form of extrinsic evidence, oral or written, used to prove that which remains absent from a contract. WILLISTON § 646, at 1144–46.

bar. *See, e.g., Andersen Consulting v. United States,* 959 F.2d 929, 934 (Fed.Cir. 1992); *Dana Corp. v. United States,* 200 Ct.Cl. 200, 214, 470 F.2d 1032, 1041 (1972); *Pacificorp Capital, Inc. v. United States,* 25 Cl.Ct. 707, 716 (1992); *see generally* CIBINIC & NASH, ADMINISTRATION, at 104 ("Since it is rarely possible to discern what was in the minds of the parties, courts and boards must often rely upon a so called 'objective test.' * * * Thus, a subjective, unexpressed intent will be given no weight unless it coincides with an objectified intent.").

Professor Williston recites the parol evidence rule as follows: "Briefly stated, this rule requires, in the absence of fraud, duress, mutual mistake, or something of the kind, the exclusion of extrinsic evidence, oral or written, where the parties have reduced their agreement to an integrated writing." WILLISTON ON CONTRACTS § 631, at 948. In such event, reciting the fundamental rationale of contract construction,[3] Professor Williston explains: "The cardinal rule of construction to be applied in the interpretation of contracts is to ascertain the intention of the parties." *Id.* § 601, at 306 (quoting *Hensler v. City of Los Angeles,* 124 Cal.App.2d 71, 77–78, 268 P.2d 12, 17 (1954)). Professor Williston then describes the cardinal rule:

> In construing a contract, the primary object is to ascertain and give effect to the intention of the parties. That intention must, in the first instance, be derived from the language of the contract. The words, phrases and sentences employed are to be construed in the light of the expressed objectives and fundamental purposes of the parties to the agreement.

*Id.* Thus, only if arrival at the intention of the parties becomes uncertain or ambiguous does the issue arise whether the parol evidence rule may, or may not, apply. Professor Williston emphasizes:

The purpose of a written contract is to put in definite and evidentiary form the terms upon which the minds of the parties to the contract have met. The subject matter of the contract and the law relating thereto made it necessary to put the terms of the contract into writing.

We have the terms of the written contract. The express terms may not be changed or nullified by parole testimony, nor may such parol testimony antecedent to the reduction of the agreement to writing be considered where the language of the agreement is clear, unquestioned and unambiguous.

*Id.* § 603, at 341; *see Greco v. Department of Army,* 852 F.2d 558, 560 (Fed.Cir.1988) ("Only if there is ambiguity should parol evidence be considered."); *Hughes Communications Galaxy, Inc. v. United States,* 26 Cl.Ct. 123, 140 (1992) ("It is axiomatic that parol evidence cannot be used to alter the terms of an integrated document, in the absence of ambiguity."). Therefore, should the terms of the contract require application of the rule, if the instrument constitutes an integrated agreement, Professor Williston recites the applicable standard of interpretation:

> The standard of interpretation of an integrated agreement, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would attach to the integration by a reasonably intelligent person acquainted with all the operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean.

WILLISTON ON CONTRACTS § 603, at 342 (quoting RESTATEMENT, FIRST, OF CONTRACTS § 230, at 310 (1932)). Thus, by applying the above standard for construing the

---

**3.** Contract " 'interpretation' is used with respect to language itself; it is the process of applying the legal standard to expression found in the agreement in order to determine their meaning," while contract " '[c]onstruction' * * * is used to determine, not the sense of the words or

symbols, but the legal meaning of the entire contract; the word is rightly used wherever the import of the writing is made to depend upon a special sense imposed by law." WILLISTON ON CONTRACTS § 602, at 320.

terms of the integrated agreement, contract interpretation occurs. Yet, just as the law of contracts recognizes varied standards of contract construction, Professor Williston distinguishes two standards of contract "interpretation":

In one division must be put not only formal contracts such as sealed instruments and negotiable paper, but also contracts or agreements where the parties have manifested assent not merely to the terms of their agreement but to a writing or other fixed symbol as a memorial or integration of that agreement.

"As a matter of substantive law, where the parties to an agreement adopt a writing as the final and complete expression of that agreement an integration results; the act of embodying those terms in the writing becomes the contract. Under such circumstances, extrinsic evidence to vary the terms of the written instrument is excluded, because the writing is the contract itself."

In this class must also be put contracts of which the law requires a written memorandum. Such a memorandum need not necessarily be an integration or memorial of the contract; but the purpose of the law in requiring written evidence can be satisfied only if the same standard is applied to memoranda under the statute as is applicable to written contracts.

In a second division must be put all other contracts.

*Id.* § 603, at 350–54 (quoting *Shivers v. Liberty Building–Loan Ass'n,* 16 Cal.2d 296, 299, 106 P.2d 4, 6 (1940)) (footnotes omitted). Should a contract fall within the "first division" of contracts, a court shall then apply a rule of interpretation which, ironically, brings the analysis in full circle to the plain meaning rule. *Id.* § 609, at 403. Therefore, in the instant circumstance, the parol evidence rule inhibits the introduction of the very evidence that the plaintiff seeks to present. *See Sterling Millwrights, Inc. v. United States,* 26 Cl. Ct. 49, 52–53 (1992) ("It is basic contract law that prior or contemporaneous parol evidence will not be permitted to change the meaning of a writing which the parties intended to be the integrated expression of their agreement, unless the parties agree to modify the contract appropriately."). Again, the plain meaning rule applies.

■ In the present dispute, therefore, the Assumption Agreement represents an integrated contract which, pursuant to the plain meaning rule, precludes the introduction of extrinsic evidence to vary the explicit terms of the agreement. *See California Sand & Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 26 (1990) ("Absent evidence establishing that the writing, in fact, did not constitute a final expression, the general rule for determining integration is that where the terms on the whole are complete and specific, the written contract 'is presumed, in law, to express the final understanding of the parties.'") (quoting *Brawley v. United States,* 96 U.S. 168, 173–74, 6 Otto 168, 24 L.Ed. 622 (1878)). Thus, despite the plaintiff's contentions regarding terms not addressed by the contract, a court may only apply the terms of the contract in an integrated agreement. *See Montefiore Hosp. Ass'n v. United States,* 5 Cl.Ct. 471, 475 (1984) ("[I]ntegration, as a bar to the admission of parol evidence, can be established only by a determination of the intention of the parties as expressed by the writing itself, the circumstances surrounding its execution, and any evidence of prior or contemporaneous negotiations."); *see generally* WILLISTON ON CONTRACTS § 633, at 1010 (describing how integration depends on intent). Thus, this Court may look only to the objective intent of the parties as expressed in the instruments at issue, applying a "reasonable person" standard, and not to any subjective attestations. *See Corbetta Constr. Co. v. United States,* 198 Ct.Cl. 712, 723, 461 F.2d 1330, 1336 (1972) (applying a "reasonable construction contractor" standard); *Salem Eng'g & Constr. Corp. v. United States,* 2 Cl.Ct. 803, 806 (1983) (applying a "reasonably intelligent contractor" standard); *see, e.g., International Fidelity Ins. Co. v. United States,* 25 Cl.Ct. 469, 476 (1992); *Design & Prod., Inc. v. United States,* 20 Cl.Ct. 207, 217 (1990). Emphasizing this objective approach, the Claims Court de-

scribed the rejection of parol evidence in such circumstances as follows:

The parol evidence rule demands that contract interpretation be unaffected by the contentions of one of the parties that he or she meant something else. "The unexpressed, subjective, unilateral intent of one party is insufficient to bind the other contracting party, especially when the latter reasonably believes otherwise." *Firestone Tire & Rubber Co. v. United States*, 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971), *later proceeding, Firestone Tire & Rubber Co. v. United States*, 196 Ct.Cl. 807 (1971); *Singer–General Precision, Inc. v. United States*, 192 Ct.Cl. 435, 446–47, 427 F.2d 1187, 1193 (1970). "The purpose and essence of the rule is to avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract." *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988).

*Pacificorp Capital, Inc. v. United States*, 25 Cl.Ct. 707, 716 (1992). In the instant case, the plaintiff alleges that she gained a right of enforcement against the SBA under the terms of the Assumption Agreement, and the defendant argues the opposite. What, therefore, would constitute a "reasonable interpretation" of this sales agreement by an objective standard?

To adduce the rights of enforcement under this integrated agreement, pursuant to the parol evidence rule, this Court looks solely to the words of the contract. Despite the absence of any provision relating to a right of enforceability by the plaintiff against the SBA, the SBA maintains express authority under the terms of the contract to enforce the terms of the sales agreement against the subsequent purchaser, SMI. The agreement states:

The ASSUMPTOR [SMI] recognizes and represents that upon execution and delivery of the within presents, this Agreement shall constitute the legal, valid and binding obligation of the ASSUMPTOR to the SBA enforceable against the ASSUMPTOR in accordance with the terms and conditions hereof and the terms of the aforementioned Note, and stipulates that the consent and approval of any other party required in connection with the execution, delivery, performance and enforceability of the within presents has been obtained by the ASSUMPTOR, * * *.

Complaint (Assumption Agreement), Exhibit E, ¶ 2. In addition, based on the fact that paragraph 5 of the Assumption Agreement expressly grants the SBA full discretion in asserting rights under the agreement, that the plaintiff certifies the absence of any claims against the SBA in paragraph 3, and that the rest of the agreement remains silent as to any other right against the SBA by the plaintiff, this Courts finds: *"Expressio Unius est Exclusio Alterius.*—Where certain things are specified in detail in a contract, other things of the same general character relating to the same matter are generally held to be excluded by implication." GRISMORE ON CONTRACTS § 105, at 164; *see, e.g., United Pacific Ins. Co. v. United States*, 204 Ct.Cl. 686, 692, 497 F.2d 1402, 1405 (1974); *Shimota v. United States*, 21 Cl.Ct. 510, 526 (1990), *aff'd*, 943 F.2d 1312 (Fed.Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992); *Public Util. Dist. No. 1 v. United States*, 20 Cl.Ct. 696, 700 (1990). Thus, this Court believes it reasonable (by an objective standard) to conclude that, if the parties had intended that the plaintiff maintains a right of enforceability against the SBA, that such provision would (and should) have been defined in the terms of the contract. Absent such, this Court rules in favor of the defendant. *See Design & Prod., Inc. v. United States*, 18 Cl.Ct. 168, 195 (1989) ("[I]f the writing was both final and complete, then the writing is an integrated agreement and the parol evidence rule will not permit a disgruntled party to add to, contradict, or supplement the writing.").

Therefore, in the absence of a contractual provision providing for enforceability of the Assumption Agreement by the plaintiff, this Court declines to rewrite the terms thereof to create such a right or to rescind the agreement to the favor of the

plaintiff. As such, this Court rejects the plaintiff's claim to a right of enforcement of the terms of the Assumption Agreement.

For all of the reasons recited herein, there is no breach of contract by the SBA in this case, and therefore, the Government is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, this Court finds a complete absence of any genuine issue of material fact and, based on the legal conclusions recited above regarding assent to contractual terms and breach of contract, likewise finds entitlement for the defendant to a judgment as a matter of law. Therefore, this Court grants the defendant's motion for summary judgment. Furthermore, based on this Court's lack of jurisdiction over a private third-party defendant and nonmonetary claims, this Court also grants the defendant's motion to dismiss the plaintiff's third-party and equitable claims. Thus, all of the plaintiff's claims are disposed of and the clerk is directed to dismiss the plaintiff's complaint. The Government's asserted right of offset is moot.

No costs.